*D. D. Pratt* and *D. P. Baldwin*, for the appellants.

---

Johns *et al.* v. Harrison *et al.*

Contract—Promissory Note.—*A*, as principal, and *B*, *C*, *D*, and *E*, as his endorsers and sureties, were indebted by note to *F*, in a certain sum, which was past due.   They desired further time for

Johns et al. v. Harrison et al.

payment. It was agreed therefore that the debt should be renewed, and new notes, by way of renewal, executed by the same parties, but without any agreement as to the time for which the renewal notes should run. A then procured blank notes, and caused them to be filled, except as to the time of maturity, and signed by himself, and endorsed by B, C, D, and E, as his sureties, and delivered in that condition to F, who thereupon, filled the blank for the time with 3 months. At the time the notes were endorsed by some of the parties, it was represented to them by A, that the renewal would be for 4 months, and they endorsed the note with that understanding, but F had no knowledge of and did not authorize such representations. The notes were not paid at maturity; F sued on them. A made default. The endorsers answered by a general denial under oath, and, on the trial, admitted that their signatures were genuine, but urged that the notes were void, because they had been altered by F, by inserting 3 months instead of 4, after they had been executed and delivered by them.

*Held,* 1. That the general denial under oath, merely put in issue the execution of the notes, and excluded all questions of usury, want and failure of consideration, and fraud, except in connection with the execution of the notes.

2. That, under the circumstances, F was, by implication, authorized by the parties to fill up the blank as to the time of payment, at his discretion.

3. That the representations of A to the endorsers could in no way effect the rights of F, who had not authorized, and had no knowledge of them, and that proof of such representations, under the issues, was irrelevant.

4. That, upon the issues, and the admissions of the endorsers, the burden of showing the invalidity of the notes rested upon them.

APPEAL from the *Marion* Circuit Court.

PERKINS, J.—This suit is founded upon a promissory note of the following tenor:

Johns et al. *v.* Harrison et al.

" $2600                     *Indianapolis, June* 8, 1861.

On *September* 1st, after date, I promise to pay to the order of *William Perkins*, 2600 dollars, negotiable and payable at *Harrison's* Bank, *Indianapolis, Ind.*, for value received, without any relief whatever from valuation or appraisement laws.

JAMES FARLEY.

Indorsed; *William Perkins, Jesse Johns, William W. Rooker, Eli Haverstick.*"

The suit is by *Alfred* and *John C. S. Harrison*, the holders of the note.

The note was executed upon the following consideration, as disclosed in evidence, and as admitted by all parties:

On the 1st of *June*, 1861, the *Harrisons* above named, held a note, then due, for 5510 dollars, on *James Farly, Freeman Farly, William Perkins, Jesse Johns, William W. Rooker*, and *Eli Haverstick*, some of whom were non-residents of *Marion* county. At the date mentioned the parties were not prepared to pay the note, and the proposition was considered of dividing the 5510 dollar note, and having the sum secured by it, secured by two new notes, given on further time, one of which was to be executed by *Freeman Farley* and certain other persons, and the other, being the note now in suit, by *James Farley* and the persons now on said note with him, being the indorsers of the 5510 dollar note, and defendants in the pending suit.

The complaint of the plaintiffs is an ordinary one against the makers and indorsers of a note payable at bank.

*James Farley*, the maker of the note, made default. The remainder of the defendants, being the indorsers, put in, as their sole defence, the general denial under oath. This formed the only issue in the case; and what did it embrace? How broad an issue was it? On the trial of it, what would be the course of evidence?

The issue covered simply the question of the execution, the signing with intent, &c., the note in suit. It excluded the questions of usury, want and failure of consideration, fraud, except as it might exist in connection with the signing, &c.

And on the trial of the issue, when the plaintiffs had produced the note, fair on its face, and proved the genuineness of the signatures upon it, they would have made out a *prima facie* case against the defendants. The burden would then have been upon the defendants, to show that the note had been altered, or filled up contrary to agreement, &c., after they signed it, or some kindred fact to these. Now, upon the trial in this case, the plaintiffs produced a note, fair on its face, with protest, notice, &c., and the defendants, thereupon admitted their signatures thereto, and waived proof, &c., and the note and protest, &c., went to the jury without objection. Thus, the admissions of the defendants placed the plaintiffs before the jury with a title, *prima facie* to judgment.

The single point made by the defendants, that is, by the four indorsers, they alone making defence, against the note was that it should have been payable at four months, instead of the 1st of *September*, which was but three months from the falling due of the original 5510 dollar note. It was admitted that the note was, in fact, given to the *Harrisons* for a part of the original note, and known to be so by the defendants, when they signed it. It is also conceded that the note was blank, as to time of payment, when it was signed by the defendants, and that but one of them signed it in the presence of either of the *Harrisons*. Hence it is not pretended that, at the time of signing, either of the *Harrisons* made any agreement with the defendants as to time. But the claim is that the *Harrisons*, prior to the time of signing, agreed with *James Farley*, the maker, that the note should be at four months, and that *Farley* took it round to the indorsers, blank as to time, and

Johns et al. *v.* Harrison et al.

procured their signatures, telling them it was to be made a four months' note. Why, if the time of payment had been actually agreed on before the note was signed, it was not stated in the note, as well as all other parts of it, is not explained. The question of time of payment was with the *Harrisons*. They already had the parties upon a note then due, for the same money, and could sue them at once. They could dictate time and terms of extension, not the defendants who were then liable to immediate suit. It should be considered, however, that the *Harrisons* may have had some interest in keeping their money out on good security, as they were, perhaps, doing by the renewal notes; but the debtors were bound to pay, renew, or be sued; and renewal, even for a day, did them no harm and was so much time gained. The renewal was their business, not the *Harrisons'* and they were not agents of *Harrisons* in procuring the renewal. It was not the case of a new loan upon agreed terms.

And in case of renewals of this character, as it is generally matter, to a considerable extent, of accommodation by the bank, it is not unfrequent for parties, who do not wish to spend time in going to the bank themselves, to sign paper in blank, leaving it with the principal to finally arrange the question of time at the last moment, on delivering the paper. Hence, previous indefinite talk as to probable time of extension should be cautiously received as evidence, if received at all.

The note in suit was delivered on the 8th day of *June*, in *Harrisons'* Bank, in *Indianapolis*, and the blank as to the day of payment thereof was then and there filled. The note was then and there signed, also, by two of the parties to it, viz: *James Farley*, the maker, and *Haverstick*, one of the indorsers. It had previously been indorsed by *Perkins*, *Johns* and *Rooker*, the other parties to it, but when and where does not appear.

The note was signed at the bank by *Farley* and *Haverstick*

after, or during a conversation with *A. Harrison*, one of the plaintiffs, as to the time the note should run, and that conversation ought to determine the contract, if there was one, in that particular as to *Haverstick* and *Farley*. For the note was delivered blank to the *Harrisons*, upon a contract as to filling the blank or it was not. If it was, that contract, being proved, must control. If it was not, then a contract was waived, and the *Harrisons* were left with the implied authority to fill the blank at their discretion. What occurred, then, at the delivery of the note?

Mr. *Farley* says the note was signed by himself and *Haverstick* at *Harrison's* Bank on, he thinks, the 8th of *June*. No persons were present but *A. Harrison*, *Haverstick* and himself. "Mr. *Harrison* went on to state that he would give me time to get my wheat off. The time the note was to run would give me time to get my wheat off. There was a good deal said about the note one way and another. If I mistake not, he said in my presence to Mr. *Haverstick*, he wanted to give me four months, and my brother six, as we had had bad luck. The time was not filled in before we signed the note. Mr. *Harrison* took it and went into the front room of the bank."

Mr. *Haverstick* says: "Put my name on the note in *Harrison's* Bank. *Harrison* said *James* had stuff enough to pay it, and four months would give him ample time to get it off." 'The blank was not filled as to time of payment when I signed it. *Harrison* took it into the front room. "I understood and signed the note as a four-months note."

*J. C. S. Harrison* says: "The note was brought to me out of the back room to fill up, with *Haverstick's* name on the back of it, and I filled it up and *Farley* signed it. I said to him, You will remember, the note comes due 1st *September*, without notice. *Alfred Harrison* then took the note into the

back room, and I suppose showed it to *Haverstick*, but don't know."

*Alfred Harrison* denies any agreement to give four months, and says *Haverstick* saw the note as it was filled up.

It was proved that some time—but how long, does not appear—before the 8th of *June*, when the note was perfected and delivered, *James Farley* had procured a blank bank note from *J. C. S. Harrison*, and had got upon it the names of *Perkins, Johns*, and *Rooker*, as indorsers, telling them it was for the renewal of their note then lying under protest, and that they were to have four months; that the *Harrisons* had told him they would be accepted as indorsers; but there is not a word of evidence showing that the *Harrisons* had the slightest intimation of what passed between *Farley* and those indorsers, and it is not pretended that the *Harrisons* ever had any communication with them. Nor do we think there is any evidence tending to show that *Farley*, in obtaining their signatures, was acting as the agent of the *Harrisons*. It was this skeleton note, thus indorsed, that was signed and delivered at *Harrison's* Bank on the 8th of *June*. There is nothing said about what the skeleton contained.

The evidence above set forth shows conclusively that no contract had been made by the *Harrisons* with either *Farley* or *Haverstick*, and it is not pretended that there had been with any body else, before the 8th of *June*, for four months' time; for it is plain that it was treated on that day, at the filling up of the note, as an unsettled point resting in the indulgence of the *Harrisons*. Other evidence shows that for near two weeks there had been occasional conversations as to what the *Harrisons* would do, or wanted to do; but there was no closed agreement, and those conversations can have no controlling influence in the case—may be laid out of it.

Coming now to the legal propositions involved, we may say—

1. If the note in question was prepared by the defendants and *Farley* to be delivered to the *Harrisons* in renewal of another note, then due, or a part thereof, and was delivered to them, blank as to the time of payment, and without any agreement upon the point, it authorized them to fill that blank. *Holland* v. *Hatch*, 11 Ind. 497, and cases cited; Byles on Bills, American note, side p. 254; Ross on Bills, top p. 111. The evidence shows the fact to have been thus.

2. Any agreement between the defendants and *Farley*, as to how that blank should be filled, of which the *Harrisons* had no notice, would not affect or control their right to fill the blank. *Carr* v. *Moore*, 2 Ind. 602; *Lambert* v. *Carroll*, Wright (O.) 108; *Spencer* v. *Buchanan*, *id.* 583; *Passumsic Bank* v. *Goss*, 31 Verm. R. 315. See *Montague* v. *Perkins*, 22 Eng. Law and Eq. R. 516; *Seely* v. *The People*, note, Am. L. Reg., N. S., Vol. II., p. 344. And evidence of such an agreement would be irrelevant upon the trial in a case like the present, where it had not been brought to the knowledge of the holder of the bill.

Let us now look more minutely at the matters more particularly complained of.

The Court instructed the jury that the burden of showing the note invalid was upon the defendants, the indorsers. As the case was placed before them, this was right, because the defendants, at the outset, admitted to the jury that their signatures upon the bill before them, which was fair on its face, were genuine. The Court had a right to assume that they were indorsers to the extent of their own admissions.

The Court instructed the jury that if the *Harrisons* had agreed before the blank was filled, and before the defendants signed it, that it should be filled at four months, and they filled it for a less time, it would avoid the note. The jury, in finding for the plaintiff, found the *Harrisons* had made no such contract. This goes to the bottom of the case.

Johns et al. *v.* Harrison et al.

If there was no such contract, *Farley* had no authority to represent to the indorsers that there was, and such representation, if made, not being communicated to the *Harrisons*, would not bind them, and was not pertinent as evidence.

On the whole, though some points in the case are not as satisfactory as they might be, we think the judgment in it ought not to be reversed. The equity is with the plaintiffs below. Justice has been done. The defendants owed the money, the whole of it, so far as this record shows, and ought to pay it. The *Harrisons*, plaintiffs below, had talked about giving them four months' time, but no agreement had been made to that effect. While this talk was going on, the indorsers put their names upon a note, blank as to time, then in the hands of *Farley*, the principal, who was acting for all these parties, then lying under protest for non-payment of this money. Now, suppose *Farley* repeated to them, as he might have done, the talk of the *Harrisons* of giving four months, but that it was not settled, and they still signed the note to be conveyed to *Harrisons*, blank as to time. This would have been saying, by implication, get four months, if you can; if not, take what you can get. This, it seems to us, is the case.

The failure to take final judgment below against *Farley* can not be raised as an objection, for the first time, by the appellants in this court.

*Per Curiam.*—The judgment is affirmed, with 2 per cent. damages and costs.

*B. K. Elliott* and *N. B. Taylor*, for the appellants.

*Barbour & Howland*, for the appellees.

(1) The counsel for the appellants argue: It was error to exclude proof of the representations of *Farley* at the time of the indorsements of the notes. Such representations were a part of the *res gesta*. *Sessions* v. *Little*, 9 N. H. R. 271; 1 Phil. Ev. 191; *Doe* v. *Reagan*,

5 Blackf. 271; *Strange* v. *Donohue,* 4 Ind. 327; *Wetmore* v. *Mell,* 1 Ohio S. R. 26; Story on Agency, §§ 57, 84; 2 Greenl. on Ev. §§ 60, 65.

By the general denial under oath, the burden of proving every material allegation was imposed upon the plaintiffs. *Johns* v. *Stebbins,* 5 Ind. 364; 7 Ind. 429.

The sworn denial admitted nothing, and when the understanding with *Farley* and its violation were shown, the burden of proof rested upon the plaintiffs. Ed. on Bills, 686, *et seq.;* 2 Greenl. on Ev. 172; *Miller* v. *Race,* 1 Burr, 452; *Grant* v. *Vaughan,* and *Vather* v. *Hort,* 6 Grant, 83; Chitty on Bills, 648; *Cathie* v. *Hansen,* 1 Duer N. Y. R. 309.

(2) The appellees' brief is not in the record, and part of the printed brief of the appellants is also gone.