The City of Aurora *v.* Cobb et al.

*Per Curiam.*—The judgment is affirmed, with costs.

*Hendricks & Matthews,* and *Walker & Richardson,* for the appellant.

*H. W. Harrington,* for the appellees.

———————◇◆◇———————

THE CITY OF AURORA *v.* COBB *et al.*

PRACTICE—AMENDMENTS.—The *nisi prius* Courts may, in the exercise of a reasonable discretion, permit amended answers to be filed after previous answers have been withdrawn.

PRACTICE.—Where several paragraphs of an answer are substantially the same in legal effect, they may all but one be stricken out on motion; or, if they all amount to the general denial, where the latter is not pleaded in form, they may all but one be stricken out on motion, and, if the general denial be so pleaded, they may all be stricken out in like manner.

PRACTICE—DEMURRER.—But the only defects in pleadings, which can be obviated by demurrer, are those indicated in section 50 of the code; and demurrers filed for causes or defects not therein indicated, should be overruled.

PLEADING—ESTOPPEL.—*Quære,* whether an answer, averring facts which the party, by reason of something in the record, is estopped to plead, may not contain facts sufficient to bar the action, if the plaintiff joins issue thereon, without taking advantage of the estoppel.

CONTRACT—CONSIDERATION.—Where an instrument is executed as a contract, between private parties, acknowledging the receipt of the consideration, whether it be money, or specific articles, or a promise or undertaking to be executed by one party, it may be shown, in bar of a suit on such instrument, that the consideration was not received; and no recitals in such instrument will estop the party interested to plead the want or failure of consideration.

The City of Aurora *v.* Cobb et al.

PRACTICE—RIGHT TO OPEN AND CLOSE.—Where the plaintiff is required to introduce any evidence to establish his right to a judgment, or to show how much it should be beyond a mere nominal amount, he is entitled to open and close.

SAME.—Where the defendant pleads by way of confession and avoidance, or in such other manner as to admit the plaintiff's cause of action, or, in open Court, before entering upon the trial, he admits the plaintiff's cause of action, and thus obviates the necessity of any proof on his part, the defendant will be entitled to open and close.

IMPEACHMENT OF WITNESS.—Evidence designed to impeach the general character of a witness should relate to the time when he testified, and his character at the place where he then resided, and amongst those who knew it there.

EXAMINATION OF WITNESS.—The cross-examination of a witness should be confined to his examination in chief.

PRACTICE.—Objections to evidence, to instructions, to findings, general or special, or to special rulings or decisions of the Court, should be specific, and designate, with reasonable certainty, the grounds of the objections.

MORTGAGE—BOND—AGREEMENT.—Several interesting questions of construction are settled herein. See the opinion.

APPEAL from the *Union* Circuit Court.

PERKINS, J.—This suit, commenced in the *Dearborn*, and taken, by change of venue, to the *Union* Circuit Court, was instituted for the foreclosure of a mortgage, alleged to have been executed to secure the performance of the condition of a certain bond, reading as follows:

"Know all men by these presents, that we, *John Cobb* and *Oliver P. Cobb*, of the county of *Dearborn*, and State of *Indiana*, are held and firmly bound unto the city of *Aurora*, in the penal sum of 60,000 dollars, for the payment of which, well and truly to be made and done, we bind ourselves, our heirs, executors, administrators, and assigns, jointly and sev-

erally, by these presents. Sealed with our seals, and dated this third day of *June*, in the year of our Lord one thousand eight hundred and fifty-three:

"The condition of the above obligation is such that: Whereas the city of *Aurora* has executed to the *Ohio and Mississippi Railroad Company* thirty bonds of said city of *Aurora*, dated the first day of *January*, in the year 1853, and numbered from one to thirty, for 1,000 dollars each, payable twenty-five years from date, bearing interest at the rate of six per cent. per annum, payable annually, on the first day of *January*, at the *North River Bank*, in the city of *New York*, which said bonds were executed by the city of *Aurora* to said railroad company, in part payment of a subscription of 50,000 dollars to the capital stock of said railroad company, made by said city of *Aurora*, by order of the city council of the city of *Aurora*, in which said bonds there is a stipulation, that the holders of said bonds should have a lien on the stock of said city, in said company, for which said bonds were received in payment; and that the holders of said bonds might exchange the same for a like amount of said stock at any time before the first declaration of a cash dividend, and be substituted as stock holders in place of said city, upon the surrender of any portion of said bonds; and whereas, the city of *Aurora*, in pursuance of an order of her city council, passed on the 3d day of *June*, 1853, has this day executed to the said *John Cobb* and *Oliver P. Cobb* a contract or deed, conveying, assigning and transferring to said *John Cobb* and *Oliver P. Cobb* all the right, title, interest and claim of said city of *Aurora*, in and to 30,000 dollars of the said stock subscribed by her in said railroad company, and represented by her said thirty bonds of said city, for 1,000 dollars each, and numbering from one to thirty, and dated and conditioned as aforesaid, with full right and authority on the part of said *John Cobb* and *Oliver P. Cobb* to receive the eight per centum inter-

est in stock, upon said 30,000 dollars of stock, represented by the aforesaid bonds, until said company shall make a declaration of a cash dividend by said company, unless the holders of said bonds shall substitute themselves as stock holders, in the place of said city, by surrendering said bonds before the first declaration of a cash dividend; that the said *John Cobb* and *Oliver P. Cobb* should become the assignees and owners, absolutely, of the 30,000 dollars of the stock represented by said bonds, with full right and authority to receive the dividends, profits and advantages arising from the ownership of said stock, which contract was executed on behalf of said city to the said *John Cobb* and *Oliver P. Cobb*, in consideration that the said *John Cobb* and *Oliver P. Cobb* would assume all the obligations and liabilities on the part of said city of *Aurora*, on account of the principal and interest of the aforesaid bonds, and indemnify her against the principal and interest of said bonds by this bond, and by mortgage on real estate in the city of *Aurora*, a description of which is contained in a mortgage executed by the said *John Cobb* and *Oliver P. Cobb*, and their wives, to the city of *Aurora*, and bearing even date with these presents, and in consideration that the said *John Cobb* and *Oliver P. Cobb* would give to said city a lien upon said 30,000 dollars of stock in case the holders of said bonds should not substitute themselves as stock holders before a declaration of a cash dividend as aforesaid: Now, if the said *John Cobb* and *Oliver P. Cobb* shall well and truly pay, or cause to be paid, all the interest that may accrue on said bonds, numbered from one to thirty inclusive, for which the said city of *Aurora* may in any way be liable, according to the tenor and effect of said bonds, and save the city of *Aurora* harmless on account of the interest accruing upon said bonds as aforesaid; and in case the holders of said bonds shall fail to surrender said bonds, and substitute themselves as stock holders as to all or any portion of said bonds,

before a declaration of cash dividends: If the said *John Cobb* and *Oliver P. Cobb* shall and do pay the principal and interest of said bonds that may not have been surrendered as aforesaid, and save said city of *Aurora* harmless on account of the principal and interest of said bonds, then this obligation to be void, else to remain in full force and virtue in law.

"Witness, &c., the day and year first above written.

"OLIVER P. COBB, [SEAL].

"JOHN COBB, [SEAL]."

Breaches of non-payment, &c., were assigned, and 3,500 dollars claimed as damages.

The condition of the mortgage, sought to be foreclosed, is as follows: "Provided, always, and these presents are expressly upon this condition: that, whereas, the said *John Cobb* and *Oliver P. Cobb* have executed to the city of *Aurora* their bond, in the penal sum of 60,000 dollars, bearing even date with these presents, and conditioned, among other things, that the said *John Cobb* and *Oliver P. Cobb* should pay the principal and interest of thirty bonds, executed by the city of *Aurora* to the *Ohio and Mississippi Railroad Company*, for 1,000 dollars each, in payment of stock in said railroad company, this day sold and assigned by said city of *Aurora* to the said *John Cobb* and *Oliver P. Cobb*, and save the said city of *Aurora* harmless on account of the principal and interest of said thirty bonds aforesaid, for 1,000 each, and numbered from one to thirty inclusive. Now, if the said *John Cobb* and *Oliver P. Cobb* shall well and truly pay, or cause to be paid, the principal and interest of said thirty bonds for 1,000 dollars each, and numbered from one to thirty, according to the tenor and effect of their bond aforesaid, executed by them to the city of *Aurora*, and save said city harmless on account of the principal and interest of said thirty bonds of said city of *Aurora*, for 1,000 dollars each, and numbered as aforesaid,

and shall well and truly keep and perform all the conditions, and covenants on their part to be kept and performed in and by said bond, executed by them to said city of *Aurora*, in the penal sum of 60,000 dollars as aforesaid, then this obligation to be void, otherwise to remain in full force and virtue in law."

A demurrer to the complaint was overruled and exception taken.

The defendants answered. There was a demurrer to their answer, but as the ruling on it was waived by their afterwards filing a substituted answer, we need not inquire as to its correctness. *Caldwell* v. *The Bank of Salem*, 20 Ind. 294.

The substituted answer was this:

4. And for further answer to said complaint, defendants say that on or about the 3d day of *June*, 1853, they, the said defendants, entered into an agreement with the plaintiff for the purchase of 30,000 dollars of the capital stock of the *Ohio and Mississippi Railroad Company*, which the plaintiff represented that it had owned and legally subscribed for, and could and would sell and deliver to the defendants, and which stock was then of the par value thereof; and by virtue of which agreement it was also provided that the stock should be at once transferred to defendants and the certificates thereof immediately delivered to them, unincumbered by any other lien or condition except a lien to said city, for the payment of the interest and principal of thirty bonds, of 1,000 dollars each, which the plaintiff was to sell for the payment of said stock; and the further conditions that the holders of said bonds might have a lien thereon for the payment of the interest and principal of said thirty bonds, and might at any time, before a declaration of cash dividend, substitute themselves as stockholders for the said 30,000 dollars of stock, upon the surrender of said bonds, agreeably to the terms of said bonds, and that the said defendants were to have imme-

diate and full possession and control of the said stock and the certificates thereof, and to be entitled to all the rights and privileges of stockholders in and to said stock from that time, subject only to the aforesaid liens and right of substitution. In consideration whereof, the said defendants were to execute and deliver to said plaintiff the bond and mortgage in the complaint described; and the said defendants aver that the said bond and mortgage were drawn up, and the said bond signed and sealed, and the said mortgage signed, sealed and acknowledged, to be delivered in pursuance with said agreement; and the said defendants admit that said plaintiff now has possession of the said bond and mortgage, but, they say, that the said possession is not rightful, and that defendants refused to make a delivery of the said bond and mortgage to the said plaintiff until the said stock was thus transferred and the certificates of said stock so obtained and delivered to defendants, and only upon the condition that the said stock be so transferred and the certificates so obtained and delivered, as aforesaid; and the said defendants aver that the said plaintiff never did transfer said stock to defendants and procure and deliver the certificates thereof to defendants according to the terms of said agreement, and that the said bond and mortgage never came into the possession of the plaintiff with the consent or by the permission of the defendants, nor was it the interest of the parties that the said bond and mortgage should be delivered as the bond and mortgage of defendants, or that it should take effect unless the said stock was so transferred, and the certificates thereof so obtained and delivered to them, as aforesaid; and the said defendants aver that the said plaintiff is not entitled to the said bond and mortgage or to recover anything thereon against said defendants; wherefore, defendants pray that the said bond and mortgage may be declared void and delivered up to defendants.

5. And for further answer to said complaint defendants say,

The City of Aurora *v.* Cobb et al.

that on or about the 3d day of *June,* 1853, they, the defend-
ants, entered into an agreement with the said plaintiff for
the purchase of 30,000 dollars of the capital stock of the *Ohio
and Mississippi Railroad Company,* which the plaintiff repre-
sented that she owned and had legally subscribed, and could
and would sell and deliver to defendants, and which said
stock was then of the par value thereof, and by virtue of which
agreement it was also provided that the said stock should be
at once transferred to the defendants, and the certificates
thereof immediately obtained and delivered to them unin-
cumbered by any other lien or condition, except a lien of said
city, for the payment of the interest and principal of the said
thirty bonds of said city of *Aurora,* of 1,000 dollars each,
which the plaintiff was to sell for the payment of said stock,
and the further condition that the holders of said bonds might
have a lien thereon for the payment of the principal and in-
terest of said thirty bonds, and might, at any time before a
declaration of cash dividends, substitute themselves as stock-
holders for the said 30,000 dollars of stock upon the surrender
of said bonds, agreeably to the terms of said bonds, and that
the said defendants were to have immediate and full possess-
ion and control of the said stock and the certificates thereof,
and be entitled to all the rights and privileges of stockholders
in and to said stock from that time, subject only to the afore-
said liens and right of substitution.   In consideration whereof,
the defendants were to execute and deliver to the said plain-
tiff the bond and mortgage in the complaint described, and
the said defendants aver that the said bond and mortgage
were drawn up, and the said bond signed and sealed, and the
said mortgage signed, sealed and acknowledged, to be deliv-
ered in pursuance to said agreement; and the said defendants
admit that the said plaintiff has possession of said bond and
mortgage, but they say that the said possession is not rightful,
and that the defendants refused to make said bond and mort-

gage to the plaintiff until the said stock was thus transferred and the certificates thereof so obtained and delivered to the defendants as aforesaid.    The defendants further aver that the city, through her officers, represented to the defendants that the plaintiff would not issue her bonds until the terms of said contract of sale and guarantee were settled and agreed upon, and also represented that the transfer of the stock and the issue of the stock certificates could only be made at the office of the railroad company, in the city of *Cincinnati*, in the State of *Ohio*, and that the said stock of the said company could only be obtained after the delivery and execution of said bonds, by plaintiff, to the railroad company; whereupon the said bond and mortgage were drawn up, and the said bond signed and sealed, and said mortgage signed, sealed and acknowledged, to be delivered and take effect from and after the transfer of the said stock and the delivery of the certificates therefor by said plaintiff to the said defendants, as aforesaid, and only upon that condition; and the defendants aver that the said plaintiff never did perform the said condition, and the said bond and mortgage never came into the possession of the plaintiff with the consent and by the permission of the defendants; nor was it the interest of the parties that said bond and mortgage should be delivered as the bond and mortgage of the defendants, or that they should take effect unless the said stock was so transferred and the certificates thereof so obtained and delivered, as aforesaid; and the defendants aver that the plaintiff never did transfer the said stock and obtain and deliver the certificates, as aforesaid. The defendants further aver that afterward, to-wit: on or about the first day of *August*, 1855, the plaintiff caused said stock to be issued to her with an indorsement, written in red ink across the face of the certificate issued therefor, that the said stock was subject to the lien of the holders of the fifty bonds of 1,000 dollars each, issued by the plaintiff to the railroad

company, (a copy of which indorsement is herewith filed,) and thereby incumbered the said stock with 50,000 dollars of said bonds, contrary to said agreement.   And the defendants aver that said stock was then of no value, and that no other stock was ever issued or offered to be delivered to the defendants by the plaintiff, or by the said railroad company, nor did the said defendants at any time ever enjoy the rights and privileges of an owner of said stock in said railroad company; but, on the contrary, the city of *Aurora* continued to exercise the right of ownership over said stock, and to represent the same in the elections of officers in said company, until the said stock became wholly worthless.   Wherefore, the defendants aver that the said bond and mortgage were never delivered by the defendants to the plaintiff, and that she has no legal right to the same, and is not entitled to recover thereon. Defendants, therefore, pray that the said bond and mortgage described in said complaint be declared void, and be delivered up to the defendants.

The following is the indorsement written across the face of the certificates of stock in red ink:

"This stock, with 400 other shares of same stock, making in the aggregate 1,000 shares, is subject to the lien of the holders of certain bonds for 1,000 dollars each, numbered from one to fifty, issued by the said city of *Aurora* to the *Ohio and Mississippi Railroad Company*, dated *January* 1, 185 , and all other conditions and stipulations in reference thereto stated in said bonds."

7. And the defendants, for further answer to the said complaint, say that at the time of the signing and sealing of the said bond, and the signing, sealing and acknowledgment of the said mortgage, the stock of the *Ohio and Mississippi Railroad Company* was of the par value thereof, and the said bond was signed and sealed, and the said mortgage was signed, sealed and acknowledged as a part and parcel of the agree-

ment set up in paragraph No. 5; and the defendants aver that the said plaintiff never complied with the said agreement; that said city never transferred the said stock, and obtained and delivered the certificates thereof, in compliance with said agreement, and never at any time offered to deliver any stock whatsoever, except as herein stated; that, on or about the first day of *August,* 1853, the plaintiff had the said stock issued to her, incumbered with the payment of fifty bonds of 1,000 dollars each, and the interest accruing thereon, issued by the city of *Aurora* in payment of 50,000 dollars of the stock of said railroad company, and then offered the same to the defendants, thus incumbered and the defendants aver that at the time of the said offer the said stock of said company was worth in the market but ten cents on the dollar, and the stock thus incumbered was wholly worthless; and the defendants aver that they never could get the said stock as per the said agreement; that the city of *Aurora* claimed and exercised the right of a stockholder in relation to said stock; voted the same at the annual elections till on and after the last named date. And defendants aver that by reason of the premises, they were wholly deprived of the rights contemplated by said agreement, and the right to secure and protect themselves against the said bond and mortgage, and that the plaintiff is not entitled to recover any sum against them whatsoever.

The plaintiff moved to strike out the paragraphs of the amended answer on three grounds; but the Court refused the motion. The grounds were:

1. That the Court improperly permitted them to be filed after the original answer had been withdrawn.

Touching this ground of the motion, we may say that it was in the power of the Court to permit the amended answer to be filed. That power was to be exercised with reasonable

The City of Aurora *v.* Cobb et al.

discretion. For aught that appears, it was so exercised in this case. See *Morris* v. *Graves*, 2 Ind. 354.

2. That the paragraphs of the amended answer were all alike. If such were the fact, the Court might properly have stricken out, in any event, all but one of them. Whether the refusal to thus strike out, where the Court might have done it, would constitute error, will be remarked upon, when noticing another point.

3. That the paragraphs severally amounted but to the general denial. If such were the fact, and the general denial, in form, was on file, the Court might properly, perhaps, have stricken them out; and, if the general denial was not on file, in form, still, if the paragraphs of the amended answer severally amounted but to the general denial, the Court might properly have stricken out all but one of them, especially, if the motion had been thus limited; but would certainly not have been bound, in such a state of facts, to strike out a part on a motion to strike out all.

After the Court had overruled the motion to strike out, the plaintiff demurred to the paragraphs of the substituted or amended answer, and assigned for causes:

1. That they amounted to the general denial, which was already pleaded in form.

2. That they attempted to set up matter which the defendants were estopped, by the recitals in the bond and mortgage sued on, to plead.

The demurrer was overruled.

The plaintiff then replied in denial of the answer. There was a trial, and a judgment for the defendants.

Did the Court err in overruling the demurrer to the substituted answer?

By the code, there are six grounds of demurrer:

1. No jurisdiction.

2. Want of legal capacity to sue.

3. Another action pending.

4. Defect of parties.

5. Want of sufficient facts.

6. Improper joinder of causes of action.

The first ground of demurrer to the substituted answer was neither of these six, and, of course, the demurrer, by the express provision of the statute, would have had to be overruled, had it assigned but that cause. 2 G. & H., p. 81. As to the second ground, it is argued that, an answer setting up matter which a party may be estopped to plead, may contain facts enough to bar the action, if the party takes issue upon it, as he may do, thus failing to take advantage of the estoppel. It is claimed that this is like failing to take advantage of the statute of limitation. As to that statute, a party may sue upon facts barred by that statute, but if the party do not avail himself of the statute, the facts will be sufficient to constitute a cause of action. So, facts, not allowed to be pleaded because they constitute a departure, nevertheless may be sufficient, if the departure be not properly taken advantage of. It is claimed that the irregularity in such cases is to be taken advantage of by motion to strike out; that it is no more inconvenient than, and is equally effective as a remedy, as a demurrer, and is the mode prescribed by statute. *Reilly* v. *Rucker*, 16 Ind. 303. But see *Ensey* v. *The Cleveland, &c.*, 10 Ind. 178. We pass this point, as it will appear as we proceed, that no estoppel exists in the case. This leads us back to the act of the Court in overruling the motion, which was made to strike out, &c.

We inquire then:

1. Did the paragraphs of the answer amount severally to the general denial?

If they did, we may observe, it is difficult to perceive what harm they did the plaintiff. Suppose a defendant should repeat, in form, the general denial three or four times; that the

plaintiff should move the Court to strike out all but one of them, and the Court should refuse, but proceed with the trial upon an issue four times repeated; what harm would the plaintiff have experienced? The Court would have violated technically correct practice in point of form and simplicity, and unnecessarily incumbered the record, but what harm could the plaintiff have experienced touching the merits of the cause? And more especially, what harm could he have experienced if those general denials had been special, setting out, and thus notifying the plaintiff of the facts which the defendant intended to prove upon the trial? But we waive this point. See Stephen on Pl. 422 and note.

Again, a defendant may, in many cases, according to cor-. rect rules of pleading, plead specially what might be given in evidence under the general denial. *Mr. Stephens* says, "it is laid down that the reason of pressing a general issue is not for insufficiency of the [special] plea, but not to make long records where there is no cause." *Ubi supra.* However, we waive this point, also, because we think the paragraphs should be regarded, not as in effect general denials, but at all events, as answers of want of consideration. The paragraphs may be double. They do not show how the plaintiff got possession of the bond and mortgage—they do not show that the bond and mortgage were ostensibly delivered to the city as an escrow, or at all. They aver that the city has them, but wrongfully. They contain, perhaps, the requisite averments of special answers of *non est factum*—some facts tending to show fraud, and certainly all the averments necessary to show want of consideration. No objection was made to them for duplicity, by motion, and duplicity is not a cause of demurrer. See 2 G. & H. *supra.*

Failure of consideration may be pleaded, under the code, "to any action," &c., "upon, or arising out of any specialty bond or deed, except," &c. 2 G. & H. 106. What then are

the facts in the case at bar? The city of *Aurora* agreed to assign her stock in the *Ohio and Mississippi Railroad Company* to *Cobb* and *Cobb*, the defendants, subject to certain rights of third persons, in consideration of the bond and mortgage now sued on, which assignment was to be concurrent with the delivery of the bond and mortgage. Now, the answer avers with some variation, as is justified by the rules of pleading, in the several paragraphs, *counts*, in legal effect, according to common law pleading, that the plaintiff got possession of the bond and mortgage without delivering the consideration, viz: the assignment of stock subject to the rights of third persons or otherwise according to agreement. It thus sets up a good bar to the action. And the defendants were not estopped by the recital in the bond and mortgage of the delivery of the assignment, to aver the non-delivery. These instruments were drawn up to speak after delivery and the receipt concurrently of the consideration, not as speaking at the time they were being drafted; and we lay down the proposition that, where an instrument is executed as a contract on one side, between private parties, reciting the reception of the consideration as being concurrently delivered, whether that consideration be money, or specific articles, or a promise or undertaking to be executed by the other contracting party, it may be shown in bar of a suit on such instrument, that the consideration was not received. There is no estoppel, in such case, to plead want of consideration received. Our code provides, (2 G. & H. p. 180, sec. 275,) that, "recitals in any written instrument shall have no greater effect than they have heretofore had in writings not under seal."

One of the paragraphs of the answer admitted the offer on the part of the plaintiff to deliver to the defendants the 30,000 dollars of stock contracted for, but subject to the lien, not of 30,000 dollars of bonds, as the defendants were willing to receive it, but to the lien of 50,000 dollars of bonds. This

was not a good tender of the stock by the city. It was made upon an erroneous interpretation of the contract between the parties. There were 50 shares of stock, and there were 50 bonds, each for the amount of a share of stock. The 50 bonds were a lien upon the 50 shares of stock, but the lien was several to this extent, that no one bond could be a lien upon more than one share of stock, though the particular share was not identified. This is plain from other provisions of the contract above set forth in the bond and mortgage. It is provided therein that every holder of a single bond may convert it into a share of stock. No one bond, therefore, can bind more than one share of stock. If it could, then every one of the bonds could not be converted into a share of stock as stipulated.

But it is contended that, the answer is inconsistent with the recitations of the contract in the bond and mortgage sued on, and involves the necessity, in its proof, of a violation of the principle that parol evidence can not be given to contradict a written instrument. Let us see. The bond recites that the city of *Aurora* was to execute a written instrument transferring the stock. The mortgage, executed at the same time, and a contract of equal dignity, recites that the city was to transfer the stock and assign the certificates. The two instruments must be taken together. Now, the answer exactly negatives performance, on the part of the city, of the contract as stated in the mortgage. It also negatives performance of the contract as stated in the bond, and further, states an additional act to be performed, and negatives the performance of it, which act, it is alleged, was a part of ths consideration, &c. But such additional consideration might legally be stated, and proved by parol evidence, even were it not recited in the mortgage. *Rockhill* v. *Spraggs*, 9 Ind. 32. See also, 12 Cush. 591.

Viewing the answer, then, as setting up want of consider-

The City of Aurora *v.* Cobb et al.

ation, neither the demurrer nor motion to strike out, was well taken to it. We incline to think the paragraphs of the answer, also, contain the requisite averments of a special answer of *non est factum*, by way of confession and avoidance. As answers of *non est factum* they amount to this: They state that we, the defendants, admit that we signed the bond and mortgage sued on, to be delivered to you, the plaintiff, when we should give our consent; that is, when certain conditions were concurrently performed; but they aver that, though the bond and mortgage have been actually delivered, and are now in the plaintiff's possession, yet that they have not been legally delivered so as to vest the title, because they were delivered without the defendants' consent, &c.

This form of pleading, we think, admits a *prima facia* case in favor of the plaintiff, and undertakes the avoidance of it. 1 Green. Ev., 10 ed., p. 50, sec. 38; also, secs. 284, 285. Doubtless the defendants might have elected to answer the general *non est factum*, under which all the facts could have been given, but the burden of the issue would have been thrown upon the plaintiff. *Union Bank of Maryland* v. *Ridgley,* 1 Har. & Gill, 353, is in point. So is *Pitman* v. *Kintner,* 5 Blackf. 250.

But we decide the cause upon the answers, viewed as answers of want of consideration. The record satisfactorily shows that the general denial was withdrawn, before going into trial; hence, as the paragraphs of the answer set up affirmative matter, the right to open and close was with the defendants, unless the plaintiff was bound to prove her damages. *Mercer* v. *Whall,* 5 Ad. & Ell. 48, Eng. Com. Law Rep. p. 447.

At common law, in a suit upon a note, it is probable that the plaintiff would have been bound to give his note in evidence to prove his damages; but under our code, as the plaintiff must place his note, or a copy of it, on the record with

The City of Aurora *v.* Cobb et al.

his complaint, thereby placing the means of computing the damages before the Court, and rendering the record a security against a second recovery on the note, it is held that, where the note is admitted, no evidence need be given by the plaintiff to show the amount for which judgment is to be rendered; and, hence, that where the note is admitted but avoided by new matter, the right to open and close is with the defendant. *Bowen* v. *Spears*, 20 Ind. 146. The rule seems to be that where the plaintiff is bound to give any evidence to establish his right to a judgment, or to show how much it should be beyond a mere nominal amount, he has a right to open and close. In actions of slander, it may be observed, except where special damages are claimed, proof of damage is not required. Our code provides that "allegations of value or amount of damages shall not be considered as true by the failure to controvert them." 2 G. & H. 100, sec. 74. A similar section in *Kentucky* seems to be held applicable only to actions of tort. 15 B. Mon. 630. The section, in our code, as we have already seen, is held not to apply where the suit is upon a written instrument which, in itself, liquidates the damages. Perhaps the bond and mortgage in this case, upon their face, furnished the data upon which the Court would *prima facia* have been bound to calculate the damages at the amount of the several installments of interest sued for, the amount not being denied by the answer. See 2 G. & H. p. 101, notes. But this we need not decide. It will be conceded that if the defendants had expressly admitted the amount in their answer the plaintiff would not have been required to adduce any evidence on the point. Now, the record informs us that the defendants, before going into trial, did expressly admit the amount in open Court. This obviated proof. See *Johns et al.* v. *Harrison et al.* 20 Ind. 317.

The opening and close were rightly given, in this case, under the circumstances, at all events, to the defendants.

On the trial, as has been stated, the defendants obtained judgment. A motion was made for a new trial, and nineteen grounds therefor stated.

The two first, that the verdict was contrary to law and evidence, we can not pass upon, because the record does not purport to contain all of the evidence. *Hamilton* v. *Johnson*, 20 Ind. 392. What we have already said, also disposes of the 5th, 6th, 7th and 9th grounds for a new trial. The third is too general. Some of the instructions were correct, and those erroneous should have been specified. This third ground is in these words: "The Court misdirected the jury in the charge given to them." The 4th, 10th, 11th, 13th and 15th grounds are obnoxious to the same objection. *Scoville* v. *Chapman*, 17 Ind. 470. We proceed to another ground.

The deposition of *Solomon P. Tumy*, was taken in *Detroit, Michigan*, in *October*, 1862, of which city he appears, by the deposition, to have been at the time a resident. The plaintiff, to impeach his character, asked a witness what *Tumy's* character was, at that date, in *Aurora, Indiana*. This question was, *prima facie*, irrelevant, because it did not seek to ascertain his character among his friends and neighbors. 1 Green. Ev. sec. 461.

The plaintiff then asked when *Tumy* left *Aurora*, and under what circumstances. This question, had it been limited to the first clause, of it, viz: that inquiring when *Tumy* left, would have been unobjectionable; but, by the second clause, it was made to cover too much, and was, therefore, rightly excluded as a whole. If it had turned out that *Tumy* left a long or considerable time before his deposition was taken, inquiries as to his character at *Aurora* would have been impertinent, because the plaintiff would have no right to prove his character at such times. Evidence of character must go to show it at the time a witness testifies. A bad man may suddenly become a legally good one, and worthy of credence.

The City of Aurora *v.* Cobb et al.

But the second clause of the question was an indirect mode of getting at character at what might turn out an improper time. *Walker* v. *The State*, 6 Blackf. 1.

*Tumy's* deposition was read in evidence. It covers forty-five pages of foolscap. The record states that the plaintiff excepted to its being read, but states no ground of objection. We can not search the deposition to find such, nor was the Court below bound to. Nothing appears showing *Tumy* to have been an incompetent witness. See, as to this point, 2 G. & H. 178, secs. 265, 266; *Russell* v. *Branham*, 8 Blackf. 277; *Torr* v. *Torr*, 20 Ind. 118.

The *Cobbs* paid the interest on the city bonds for a year or two. It was claimed that that fact was an admission of a completed contract with the city. Parol evidence was admissible to show that the payment was upon other considerations.

The Court is said to have erred in giving special interrogatories to the jury to be answered, or for special findings, but why was not stated to the Court below. The objection need not be noticed.

It is objected that all the special questions were not answered, but the Court was not asked to send the jury back to supply the omission. *Rosser* v. *Barnes*, 16 Ind. 502.

In some instances, objection was made to questions put to witnesses, but no objection was made to the answers; hence, it is insisted, that objections to them may be considered as waived. Though the questions were illegal, it is argued, still the answer may, in the opinion of the objector, have been harmless or favorable to himself, and its exclusion from the jury not desired. We do not concur in this view, but still do not think the error in this case was so material, as presented by the record, that it should reverse the case. If the answer be harmless, it is not important that the question was improper. 19 Ind. 318.

It is the rule, in this State, that the cross-examination must

be confined to the matter of the original examination.    6 Ind. 417; 12 *id.* 256, 455; Davis' Dig. 859, secs. 84, 85.

The Court was asked to give its general instructions in writing, which it did not do; but it is not shown that the request for written instructions was handed to the Court in proper time to enable the Court to prepare them before the close of the argument.    16 Ind. 275; 10 *id.* 338.

It is objected that the Court did not instruct the jury generally at all, but only gave the special instructions handed up by both parties.    If those instructions covered the entire case, we see no reason why the Court should have given further instructions of its own preparing.    We must presume that the Court below considered the whole ground covered. And if it did so, it would hardly know what further to say.

But we will not continue answering these objections; and, owing to the length to which this opinion is extending, we have been brief in our notice of numerous points remarked upon, but, we trust, none the less understood.    We have felt that it was due to the counsel, who have so ably and thoroughly argued the cause in this Court, as well as to the importance of the cause to the parties, in a pecuniary point of view, that we should not entirely omit to notice any plausible point made.    We notice one, and but one more, in conclusion.

On the day that the cause was set for trial, being the fifth day of the term, the plaintiff asked for a continuance on account of the absence of several witnesses, who had been subpœned, and of two who had not been.    The continuance was refused, but the cause went over for about two weeks—ample time to have procured the attendance of the witnesses subpœned, and most of whom, in fact, appear to have been present when the cause was tried.    When the cause came on for trial, the motion to continue was not renewed.    The cause had been pending about eleven months, and no valid excuse is shown for failing to subpœna, or to procure the depositions

The City of Aurora *v.* Cobb et al.

of the witnesses not subpœned. The continuance, when asked, was rightly refused to another term, but properly granted temporarily.

We discover no error for which the judgment below should be reversed.

*Per Curiam.*—The judgment is affirmed, with costs.

*Abram Brower, Jr.*, and *Thomas G. Mitchell*, for the appellant.[1]

*J. D. Haynes* and *T. D. Lincoln*, for the appellees.[2]

(1) The counsel for the appellant argue :

A plea which, professing to answer an action based upon a written contract, sets up a state of facts on the contract, varying the terms of the writing, is a bad plea on demurrer, because the terms of a written contract can not be changed or varied by proof of what was said, or agreed to, before or at the time of the making of the written contract. 1 Blackf. 191, and note; 5 *id.* 18; *id.* 273; 6 *id.* 183; *id.* 509; 7 *id.* 378; *id.* 432; 5 Ind. 184; 8 *id.* 79; *id.* 256; *Van Ostend* v. *Reed*, 1 Wend. 424; 1 Greenl. on Ev., 315 *et seq.;* 1 Parsons on Cont. 355–6; 2 *id.* 60, 61 and note; 11 Ind. 280; 6 *id.* 379; 3 *id.* 198; 10 *id.* 32; 10 *id.* 188.

A deed may be delivered to a stranger to take effect on a condition to be subsequently performed; but if it be delivered to the obligee on such a contingency, the contingency is a nullity and the delivery absolute. *Foley* v. *Cowgill*, 5 Blackf. 18. One obligor may, perhaps, deliver a bond to another co-obligor, as an escrow, but an instrument can not be so delivered to the obligee or to the payee, or the *agent of either*. *The State, &c.* v. *Chrisman*, 2 Ind. 126. And parol evidence can not be given to vary the legal effect of such delivery, or the terms of the instrument delivered. *Hiatt* v. *Simpson*, 8 Ind. 256; 7 Ind. 600; 2 Abbott's N. Y. Dig. 678; 4 Pick. 520; 8 Mass. 238; 23 Wend. 45; 10 *id.* 313; 5 N. Y. R. 229.

Where a pleading contains allegations which, by reason of the recitals in some contract or other instrument of record in the case the pleader is estopped to aver, such pleading will be demurrable. 7 Ind.

600; 8 *id.* 324; *id.* 367; 16 *id.* 219; *id.* 143; *id.* 180; *id.* 368; 15 *id.* 161; 4 Blackf. 435; 3 Ind. 449.

(2) The counsel for the appellees argue:

The granting or refusing of continuances is a matter resting in the sound discretion of the Court, and is not ground of error. 16 Vermont R. 16; 3 Hayw. 145; 4 Humph. 472; 1 Hemp. 265; 9 Rich. L. 454; 1 Miss. 74; 15 Ala. 43; 4 Ind. 202; 8 *id.* 420; 1 Blackf. 50.

Estoppels are odious, and are only applied to prevent frauds, and never in aid of frauds. 7 Barb. 409; 14 Cal. R. 367; 39 Maine 581; 2 Zab. N. J. 691.

A bond, mortgage or other instrument must come to the possession of the party claiming under it, by the consent of the grantor or obligor, or it is no delivery. 34 N. H. R. 260; 11 Foster 332; 4 Harr. (Del.) 78; 12 Johns. 422; 34 N. H. R. 460; 17 Geo. 267; 10 Ind. 184. The grantee must also intend to receive it as his deed, &c. 1 Johns. Cas. 116; 12 Johns. 421; 2 Wend. 318; 20 Johns, 187.

An equitable title to real estate may pass by writing, without deed, and the party may hold and enjoy the same. Yet, if he contract for a title, the law will see that he receives a deed. So, in many cases, certificates of stock are necessary to give to the owner all the rights of a stockholder. The transfers in most cases should be made upon the proper books of the company. 42 N. H. R. 452, 3 Zab. (N. J.) 75; 20 Cal. 529; 3 T. B. Mon. 128.

The question of opening and close, on the trial of a cause, is, at the common law, wholly within the discretion of the Court, and the determination of it is no ground of reversal. 8 Conn. 303; *id.* 261; 16 Ohio 330; 7 Wis. 19; 8 Clarke 335; 1 Greenl. Ev. § 76; 7 Eng. L. and E. R. 381; 10 Jurist 390. But the rule in *Indiana* is fixed by statute. 11 Ind. 220; 20 *id.* 320; 7 Ind. 229; 7 Blackf. 164; 16 Ind. 294.

Simple possession of such instruments as bonds, certificates of stock in railroad companies, and other corporations, is *prima facie* evidence of delivery. 27 Penn. 35; 18 Maine 200; 4 Cush. 287; 4 Florida 373; 10 Rich. Eq. 219; 1 Zab. 287; 6 Pet. 137; 5 Blackf. 160; 4 Ind. 469; 10 *id.* 473; 15 *id.* 280; 16 *id.* 285; 7 *id.* 575.

It is also held that the recording of such instruments as mortgages

is presumptive evidence of delivery.  34 Penn. 252; 34 Mass. 708; 1 Head 576; 40 Maine 585; *Jackson* v. *Perkins*, 2 Wend.; *Gilbert* 'v. *A. Ins. Co.* 23 Wend.; 1 Penn. 43 ; 12 Cal. 232.

Where a party objects to a whole mass of testimony as incompetent, he must show that every particle of it is incompetent, or his objection must be overruled.  The Court is not bound to look it over, and separate the good from the bad.  He must put his finger on the bad, and call the attention of the Court to it.  And hence, if any particle of the evidence objected to should have been admitted in any aspect of the case, or for any purpose in it, the objection must fail, and it is not error to overrule.  13 Pet. 338; *id.* 310; 11 Md. 408; 1 *id.* 474; 15 Ala. 535; 3 Gill. 220; 2 Ind. 46; 1 *id.* 540; 2 *id.* 203; 5 *id.* 455; 3 *id.* 329; 8 Blackf. 277; 3 Ind. 503; 20 Ind. *id.* 129; 38 N. H. 332; 3 How. U. S. R. 550; 8 Blackf. 366.

It may always be shown in reference to deeds and other instruments, that there were other considerations than those named.  12 Cush. 591; *id.* 32; 2 Zab. 691; 18 Pick. 113; 17 Ves. 200; 4 Florida 387; 12 Ind. 348; 1 *id.* 61; 9 *id.* 32; 3 Blackf. 189.

A party has no right to put a question, on cross-examination of a witness, which is not made legitimate by some question propounded in the examination in chief.  6 Ind. 420; 12 Ind. 258; *id.* 458; 14 Pet. 461; 1 Greenl. on Ev. § 445.

All exceptions are construed most strongly against the party taking them.  15 Ala. 18; 18 *id.* 719; 21 *id.* 204; 30 *id.* 244.  And where a party excepts to a charge generally, he must show that every proposition in it is false in law.  4 Seld. 43; 2 *id.* 236; 1 *id.* 428; 30 Barb. 264; 2 How. U. S. R. 382; 3 Gill. 220.

In an action to enforce a contract evidenced by bond and mortgage, in a Court having equitable jurisdiction, the defendant, upon proper issues, may have the contract declared to be void and ordered to be delivered up, and, especially, where the invalidity of the contract does not appear on its face, but requires proof.  3 Daniel's Chan. Pr. 1,744; 1 Dana 590; 27 Conn. 313; 28 Geo. 442; 31 Barb. 368; 7 Ves. 19; 17 *id.* 112; 18 *id.* 60; 2 Swan. 545; 1 Ves. and B. 244; 1 Johns. Chan. 522; 13 Ves. 586; 10 *id.* 218.

Appellate courts will often presume in favor of the rulings of in-