## GRIMES *v.* PIERSOL.

PROMISSORY NOTES.—INDORSEMENT.—The indorsement of a negotiable prom-
issory note is an original undertaking, and imports a consideration. If
made without qualification it implies a promise that the note is due and
payable according to its tenor, and that the maker is solvent and liable
to pay the same.

SAME.—BLANK INDORSEMENT.—An indorsement in blank carries with it an
implied power to the person to whom it is delivered to fill up the indorse-
ment with his own name, or the name of any other person, or, leaving the
indorsement in blank, the note may be transferred by delivery, and in
that case any subsequent holder may fill up the indorsement to himself,
and sue upon it.

SAME.—SPECIAL INDORSEMENT.—If a note is indorsed in full, to a particular
person, the indorsee cannot strike out his own name and substitute the
name of another, but must himself indorse it in order to transfer it.

ALTERATION OF WRITTEN INSTRUMENT.—A material alteration of an instru-
ment after its delivery, by a party who claims under it, or one under whom
he claims, made without the consent of the party against whom it is
sought to be enforced, renders it void.

SAME.—To strike out the name of the indorsee in a full or special indorse-
ment of a promissory note and substitute the name of another, without
the consent of the indorser, is a material alteration of the contract, and
no recovery can be had on it against the indorser.

APPEAL from the *Montgomery* Circuit Court.

ELLIOTT, J.—*Piersol* sued *Noah W. Grimes* on the assign-
ment of a promissory note executed by *George W. Grimes*
to said *Noah W. Grimes,* for the payment of $100.

The assignment sued on, which is indorsed on the back
of the note, reads thus: "Pay *Isaac Piersol,* or order."

*March,* 6, 1861.                    "N. W. GRIMES."

*Grimes* answered, denying the assignment under oath,
which was the only issue presented in the case.

By agreement of the parties, the issue was tried by the
court without the intervention of a jury. The court found
for the plaintiff, overruled a motion made by the defend-
ant for a new trial, and rendered a judgment on the find-
ing. The evidence is made a part of the record by a bill

of exceptions. The only point presented by the appellant, under the motion for a new trial, is as to the sufficiency of the evidence to sustain the finding of the court.

On the trial, the defendant was called and sworn as a witness on the part of the plaintiff, and testified that the signature to the assignment was his genuine signature, and that he wrote the letter then shown to him, which was then given in evidence, and is as follows:

"CRAWFORDSVILLE, *November* 6, 1861.

Mr. *Isaac Piersol, Thorntown, Ind.*,

*Dear Sir:*—I am in receipt of a letter from *H. H. Still-well*, Esq., of *Covington*, in regard to a note of *George W. Grimes*, which is indorsed by me, in which he says diligent efforts were made to collect said note but failed, and says that I am now made liable and wishes me to write to you what I can do. I will just say that I am not able to pay it at present, but I will see said *George W. Grimes* and try and get the matter arranged, and if I fail then I will make arrangements to settle this matter, without further cost, some time during the winter, which is as early as I can now promise, as I have a good deal of money to pay and did not expect to have this to pay. Write me and oblige

Yours truly, N. W. GRIMES."

On cross-examination, *Grimes* further testified, "that he assigned and transferred the said note to *T. C. Barton*, and filled up the assignment to said *Barton*. That the name of said *Barton* in the assignment has been erased by some one without his knowledge or consent, and the name of *Isaac Piersol* inserted over said erasure, without his knowledge or consent. That said letter was written to the said *Piersol* under the belief that said *Piersol* held said note by assignment, in the regular way, from said *T. C. Barton*, to whom he, witness, had assigned said note." This was all the evidence given in the cause. We assume that the facts are as stated by *Grimes*. The letter written by him to *Piersol* is in no respect inconsistent with his statements, while his explanation of the circumstances,

under which he wrote the letter is an unequivocal denial that he had any knowledge, at that time, of the alteration of the assignment. Indeed, the facts as stated by him are not attempted to be controverted by *Piersol's* counsel.

The question, then, presented is simply this: Where a promissory note is assigned by an indorsement in full, to a particular person named therein, can the assignee or his vendee, without the consent of the assignor, strike the name of the assignee from the indorsement, and insert in its stead the name of such vendee, and thereby enable him to sustain a suit upon the assignment, against the assignor, as upon an assignment made to himself?

We think it clear that he cannot. The indorsement of a negotiable promissory note is of itself a contract, an original undertaking, and *prima facie* imports a good consideration, and if without qualification, it either constitutes or implies a promise that the note is due and payable according to its tenor, and that the maker is solvent and liable to pay the same. 2 Pars. on Notes and Bills 23; *Johnson* v. *Dickinson*, 1 Blackf. 256; *Tam* v. *Shaw*, 10 Ind. 469.

The indorsement of a negotiable note by the payee in blank, carries with it the implied power that the person to whom it is delivered may fill up the indorsement with his own name, or the name of any other person he may desire, or leaving the indorsement in blank, he may transfer it by delivery, and any subsequent holder may fill up the indorsement to himself and sue upon it. But if the payee indorse such a note in full, as in the case at bar, the person to whom it is so indorsed cannot change or alter such indorsement by striking out his own name and substituting the name of another, but must himself indorse it in order to transfer it to another, for, by indorsing it in full, the payee declares his intent not to be made liable except to such person, or by the indorsement so made to him. See, on this subject, 2 Pars. on Notes and Bills, 20; Smith's Mer. Law, 289; Edw. on Bills, 268; Chitty on Bills, 257.

Mr. *Parsons* says: "A holder cannot alter the directions already given by indorsers, and. must make out a chain to himself through them, until there is a blank indorsement." Notes and Bills, p. 19.

The reason for the rule is plain and obvious. The indorsement is the written contract of the indorser, and as such cannot be altered or changed without his consent.

It is also well settled that a material alteration of an instrument after delivery, by a party who claims the benefit of it, or by one under whom he claims, made without the consent of the party against whom it is sought to be enforced, renders it void. *Stoner* v. *Ellis*, 6 Ind. 152; *The State* v. *Polk et al.*, 7 Blackf. 27; *Richmond, &c., Company* v. *Davis, id.* 412.

Here the alteration was clearly material. The assignment as sued on, purports to have been made directly to *Piersol*, and deprives the defendant *Grimes* of any defense he might have thereto under the statute, as against *Barton*, to whom the assignment was, in fact, made. The change rendered it no longer the assignment of *Grimes*, and no recovery can be had against him upon it.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*S. C. Willson*, for appellant.

*P. S. Kennedy*, for appellee.