## ARMSTRONG *v.* COOK.

PROMISSORY NOTE.—*Fraudulent Perversion of.*—Where a note payable in bank is indorsed upon the representation of the payee that, if it be made and so indorsed, he will have it discounted at a certain bank, with which he falsely pretends to be negotiating for that purpose, and with the proceeds take up a matured note given by the same maker to the same payee, but the payee, instead of having it so discounted, retains it in his own possession, there is a want of consideration to support it against the indorser in the hands of the payee.

SAME.—*Co-Surety.—Contribution.*—Where a note payable in bank is indorsed with the understanding that the payee will also indorse it for the purpose of having it discounted to raise money for the benefit of the maker, there results between the indorser and payee the relation of co-sureties, with liability to contribution.

SAME.—*P eading.—Demand.—Notice.*—In a suit against the indorser of a note payable in bank, the allegations of demand and notice of non-payment must be averments of such facts as constitute proper demand and notice.

APPEAL from the Vanderburgh Common Pleas.

FRAZER, J.—Cook sued Wheeler, Farrar and Jesse Armstrong as makers, and Cyrus Armstrong as indorser of a promissory note. The complaint is in two paragraphs. The first avers, that on the first day of February, 1866, Wheeler, Farrar, and Jesse Armstrong made, and Cyrus Armstrong indorsed, a promissory note, whereby the defendants promised to pay the plaintiff $2,999.32, at the Evansville National Bank, which remains unpaid, except $500; that on the 4th day of June, 1866, said defendants, Wheeler, Farrar and Armstrong, got wrongful possession of the note, upon the false pretense that they would give plaintiff a new note for the amount, less $500 paid thereon, indorsed by Cyrus Armstrong; that on said day plaintiff demanded of said defendants the new note, but they refused it; that he then demanded the old note, but they refused to give it up, declaring that it had been destroyed; that payment of the original note was *duly demanded, at the proper time and place,* and payment refused; *and Cyrus had notice.*

The second paragraph is substantially like the first. It alleges the making, indorsement, description, maturity, non-payment, fraudulent possession and destruction, as the same are alleged in the first paragraph; alleges that payment of the note was duly demanded on the 4th of June, 1866; that the note remains unpaid, except $500, which was paid about the 4th of June, 1866, and that Cyrus Armstrong had *due notice of the non-payment of the note.*

All the defendants but Wheeler appeared, and joined in an answer, which, as there is no point made upon it, we may omit, except to say that the sixth paragraph is the general denial.

Cyrus Armstrong answered in three paragraphs. 1.

General denial. 2. That his indorsement of the note was procured by fraud, in this, that Cook held a note against Wheeler, Farrar, and Jesse Armstrong for $3,000; that, at maturity, he, to obtain Cyrus Armstrong's indorsement, fraudulently pretended to have parted with the note, but pretended to negotiate with a bank, which he pretended was the holder and owner of the note, a loan to the makers, upon condition that Cyrus Armstrong would indorse the note; that he did indorse the note upon the faith of the truth of these representations, whereas they were false, and made for the fraudulent purpose of procuring the note to be made and indorsed, and which was still the property of Cook, and the bank had no interest therein.

The third paragraph, as finally amended, charges that Cyrus Armstrong was induced to indorse said note by fraud, in this, that before the making and indorsement of the note sued on, Wheeler, Farrar and Jesse Armstrong were indebted to Cook, by note, in the sum of $3,000; that this note matured about the 1st of February, 1866; that at the maturity of the note, Wheeler, Farrar, and Armstrong applied to Cook for an extension; that Cook refused to renew it, but agreed to try and procure a loan for the amount from the Evansville National Bank; and, for the fraudulent purpose of procuring the signature of Cyrus Armstrong, he falsely and fraudulently pretended that he had procured a loan from the bank, and brought the note sued on to Wheeler, Farrar, and Armstrong at the same time, for the purpose aforesaid, falsely representing that he brought it from the bank, and that upon their signing, and Cyrus Armstrong indorsing it, Cook would also indorse it, and have it discounted in bank, and, with the proceeds, take up the other note; that Jesse Armstrong, who is the son of Cyrus Armstrong, believing these representations to be true, repeated them to Cyrus, who, upon the faith of their truth, and the belief that Cook was to become his co-indorser to the bank, indorsed the note, whereas, in fact and in truth, said bank had no interest in the note, and did

not loan the money, and the note, when executed, belonged to Cook, and the whole transaction was a mere false pretense to get the name of Cyrus Armstrong on the paper.

The court sustained a demurrer to each of these two special paragraphs.

Assuming at present that the complaint was sufficient, it is difficult to conceive of a plainer proposition in the law than that both the second and third paragraphs of Cyrus Armstrong's answer were good. The facts alleged in each show an utter want of consideration to support the note against him in the hands of the plaintiff, and a fraudulent perversion of it, by the plaintiff, to a purpose never intended by Cyrus. It might be very material to him who should be his creditor in the first instance. He intended it should be the bank; so he contracted, but without his consent it was attempted by the plaintiff to take advantage of the form of the paper and compel him to become the debtor of the latter. Such is the effect of both the paragraphs of the answer. In *Smith* v. *Knox*, 3 Esp. 46, it was said by Lord ELDON that "if a person gives a bill of exchange for a particular purpose, and that is known to the party who takes the bill, * * then the party taking the bill cannot apply it to a different purpose."

Until the note was negotiated, it created no obligation whatever; and even in the hands of a holder who gave value, but with notice of the facts, it would not have been valid as against the appellant, Cyrus Armstrong. So are all the authorities. *Kasson* v. *Smith*, 8 Wend. 437; *Denniston* v. *Bacon*, 10 Johns. 198; *Woodhull* v. *Holmes*, *id*. 231; *Brown* v. *Taber*, 5 Wend. 566; Edwards on Bills, 315.

But the third paragraph of the answer goes further still. According to its averments the appellant Cyrus indorsed the paper with the distinct understanding that the plaintiff would also indorse it, for the purpose of having it discounted to raise money for the benefit of the makers. As between the parties this would have created, between Cyrus and the plaintiff, the relation of co-sureties, with the liability of contribu-

tion if either should be obliged to pay the debt. But the plaintiff seeks to force upon the appellant Cyrus the entire liability of a sole surety. Such a transaction finds no greater approval in the law than it obtains in morals.

But the complaint was not good in either paragraph, and the demurrers should have been applied and sustained to it. The allegations of demand and notice of non-payment are too brief even for the code. Facts, not conclusions of law, must be stated.

The first paragraph fails to show notice to the indorser in proper time to charge him. "Due notice of the non-payment of the note," as in the second paragraph alleged, is not a good averment of notice in apt time. Even the form (2 G. & H. 374), the use of which the statute justifies, by enacting that it shall be sufficient, does not sanction it. What is *due notice* is a question of law. "Cyrus had no-tice"—the formula of the first paragraph—is, perhaps, more meagre. There the pleader does not even express an opinion as to the legal sufficiency of the notice. It would be a disagreeable duty to reverse a judgment merely on account of defects like these in a complaint, and that neces-sity need never arise. See *Harbison* v. *The Bank*, 28 Ind. 133.

The judgment against Cyrus Armstrong is reversed, with directions to proceed according to this opinion.

*A Iglehart* and *J. M. Shackelford*, for appellant.

*M. S. Johnson* and *C. Denby*, for appellee.