Wilson *v.* Kinsey.

---

## WILSON *v.* KINSEY.

PROMISSORY NOTE.—*Signing Blank.—Notice of Non-Payment.*—For the accommodation of A., B. signed his name with A. on the face of a promissory note payable in bank, a blank being left for the name of the payee. A. stated to B. that he expected to discount the note at the bank where payable, and that the names of the bankers could be inserted at the bank; but no restriction was imposed by B. as to the person to whom the note should be made payable. The note was not discounted by the bank, but was negotiated by A. to C., and the name of C. was inserted by A. as the payee.

*Held,* that B. was liable on the note to C.

*Held,* also, that as B. was a maker, and not an indorser, he was not entitled to notice of non-payment.

From the Hamilton Circuit Court.

*D. Moss* and *F. M. Trissal,* for appellant.

*T. J. Kane, A. F. Shirts, J. W. Evans,* and *R. R. Stephenson,* for appellee.

DOWNEY, J.—Suit by the appellant, as payee, against Darwin W. Butler and the appellee, as makers of a promissory note payable at the Citizens' Bank of Noblesville. Butler made no defence. The note has credits amounting to seven hundred dollars.

After issues formed upon an answer by Kinsey alone, and after the evidence was heard, the plaintiff demurred to the evidence of the defendant, the demurrer was overruled, and there was judgment for the defendant. This ruling of the court is here assigned as error.

The note was signed in blank, as to the name of the payee, Kinsey signing for the accommodation of Butler, and given to Butler that he might raise money on it for his own use. Wilson, the plaintiff, loaned him the money, and Butler filled the blank in the note with Wilson's name as the payee.

The question presented is, whether Kinsey is liable on the note or not, under the circumstances disclosed by the evidence. So much of the evidence as is material to this question is as follows :

Kinsey, the defendant, testified as follows, in substance : Butler came to me and asked me if I would endorse the note sued on to the bank for fifteen hundred dollars ; I told him I would ; he got a blank and asked me to sign it—a blank note to Citizens' Bank ; I told him I would not sign a blank, to fill up the note and I would sign it; he filled up the note, as to the time and amount, and left the names of Locke and Bonebrake, the bankers, blank ; I asked him why he left it blank, and he said he could have the names filled in at the bank; Butler told me that he had bought two car loads of cattle, and as soon as he shipped them and got returns he would pay the note; he said he had made arrangements at bank for the money; nothing was said about my signing or indorsing a note to Wilson; his name was not mentioned;

Wilson did not tell me that he held the note until after But-
ler became a bankrupt.

Levi testified, that Butler came out of his store, at the cor-
ner, and had a paper in his hand, and Wilson asked him what
he was going to do with it; he said he was going over to bank
to get some money; Wilson stepped round to him and asked
him who was on the note; he said Kinsey; after Butler told
him that, Wilson said he need not go to the bank; that he
would give him a check for it.

Butler testified, that he was the principal in the note.

Bonebrake, a member of the banking firm named, testified:
Butler had made no arrangements at the time to borrow fif-
teen hundred dollars; I do not think the note was ever pre-
sented to us to get the money; Butler was getting money of
us frequently; an inquiry might have been made as to whether
money could be obtained or not, and no note shown; I do
not remember of ever refusing Mr. Butler money.

Butler recalled: I told Mr. Kinsey that I wanted to get
his name; that I wanted to raise some money; he said, "All
right." We went back, and I got a blank note; I told him the
amount; that I wanted it to pay for some cattle, etc.; I filled in
the amount; he asked the price of the cattle; he signed the
note in blank, and I told him it was a bad idea not to fill up
a blank, and I then filled it up as to the amount and time; I
told him I was going to use the note in bank; that I expected
to get money there; Kinsey may have requested me to fill in
names of Locke and Bonebrake, and I may have told him it
could be done at the bank, but I have no recollection of it; I
went over to bank and asked Mr. Bonebrake for the money;
told him I wanted fifteen hundred dollars; he told me, if I
could get along without it, it would be an accommodation to
them; I did not get the money from bank; I did not want
to importune Bonebrake for money; my notion was then to
get it at Indianapolis; I walked across the street and met
Wilson on the corner opposite the bank; asked him if he had
any money; I told him that I wanted fifteen hundred dollars;
that it was not convenient for the bank to let me have it; he

said he had it; he came in and gave me a check for the
money; I told him I had a note; that I was going to the
bank to get the money, and had expected to get it there;
Wilson knew, of course, that Kinsey was my indorser, that
they had not the money at the bank, and that I would give
the note to him; I filled in the name of R. L. Wilson, and
gave him the note; I did not transfer the note to Wilson
before I went to the bank to see whether I could get the money
or not; I used the money to pay for cattle; got fifteen hun-
dred dollars from Wilson for the note.

It is urged by counsel for appellant, that this evidence
shows an agreement between Butler and Kinsey that the note
should be negotiated to the bank, and not to any other party;
that Wilson knew that this agreement was being violated
when the note was made payable to him by filling in his name,
and that, consequently, the note is invalid in his hands.

We find the law stated thus, in Edwards on Bills and Notes,
95: "Any material alteration made in a note after its exe-
cution or indorsement, such as inserting words of negotiability
or altering the time or place of payment, discharges the pre-
vious parties to it. But where a blank is left in it, there is an
implied authority to the holder to fill up the instrument, and
make it in fact what it was designed to be. If made payable
to blank, the person to whom it is negotiated may fill it up
by inserting his own name; if made payable to the order of
the person who shall thereafter indorse it, it is negotiable
without any alteration, and may be transferred by indorse-
ment. So, if a person sign his name upon a blank paper, and
deliver it to another to draw above the signature, he is consid-
ered as by that act authorizing it to be filled up for any
amount."

Conceding that when the note was signed by Kinsey and
given to Butler, he might have restricted Butler, so that he
could make the note payable by filling it up to some desig-
nated person only, still, it is quite clear, that this restriction
could have no effect upon another party to whom it might be
made payable for value, and without notice of the restriction.

We do not doubt, in view of the evidence, that when the note was signed Butler intended to negotiate it at the bank, but we find no evidence of any agreement between him and Kinsey that he should not negotiate it elsewhere. Had Kinsey insisted upon any such thing, it seems probable that when the subject of restricting the authority of Butler was under consideration, he would have insisted upon having the blank for the name of the payee filled, as well as the ones which he insisted on having filled, before he parted with the paper. This he did not do, but permitted the paper to go out into the market as it was. In that condition, it fell into the hands of Wilson, who paid value for it, and who, as we think, is not charged with notice of anything which can affect his right to recover upon the note.

The testimony of Butler is relied upon as bringing home to Wilson the fact that the note was signed by Kinsey under an agreement restricting Butler to a specified person to whom it was to be made payable. If we are right in our conclusion, that the evidence fails to show any such agreement between Butler and Kinsey, then it follows, of course, that Wilson could have had no notice of any such agreement. We think, from the evidence, it is true that Wilson knew that Butler had been or was intending to go to the bank for the money, but this comes far short of showing that Butler had not the right to get the money on the note from any other party who might be willing to purchase it, or loan the money on it.

There is no question in the case as to the application of the money raised on the note. It was applied to the purpose for which it was to be raised.

We have examined the following cases cited by counsel, and which bear to some extent on the question decided: *Johns* v. *Harrison*, 20 Ind. 317 : *Grimes* v. *Piersol*, 25 Ind. 246 ; *Armstrong* v. *Cook*, 30 Ind. 22 ; *Fetters* v. *The Muncie National Bank*, 34 Ind. 251 ; *Houston* v. *Bruner*, 39 Ind. 376 ; *Gillaspie* v. *Kelley*, 41 Ind. 158.

We think the court should have sustained the demurrer of the plaintiff to the evidence of the defendant.

A cross error is assigned by the defendant, based on the action of the court in sustaining a demurrer by the plaintiff to the second paragraph of the answer of Kinsey. It alleges, that he signed the note as indorser for Butler; that it was made payable at the Citizens' Bank of Noblesville, in Hamilton county, Indiana, payable, twelve days from date; that the note was not presented by the plaintiff at said bank at maturity and payment demanded, nor by any other person for the plaintiff, or at any other time; that the defendant was not notified by the plaintiff, or any other person for him, at the maturity of said note, of the ownership of the note by him, or of its non-payment; that the plaintiff held said note for a long time after, to wit, for three months, before notifying this defendant of the fact; that at the maturity of said note the defendant (Butler?), although in failing circumstances, was abundantly able to pay said note; that the plaintiff, by the use of due diligence, or by notice to this defendant, could have collected the same; that he held said note negligently and carelessly until the insolvency of the defendant Butler, before giving notice to this defendant; that the plaintiff had full knowledge at all times as to the relation this defendant sustained to said note and the financial condition of the defendant Butler; that by reason of the negligence and carelessness of the plaintiff, and knowledge on his part of the foregoing facts, the defendant claims to be discharged, etc.

The ground assumed against this ruling, as we understand counsel, is, that Kinsey was liable on the note as an indorser only, and that he was discharged for the want of notice of the non-payment of the note. This position cannot possibly be sustained. Kinsey was a maker of the note, with Butler his principal, and was not entitled to notice of non-payment. As he, as well as Butler, was bound to pay the note, so he, as well as Butler, was bound to know whether the note was paid or not, without any notice from the holder.

The judgment is reversed, with costs, and the cause remanded, with instructions to sustain the demurrer to the

evidence of the defendant, and, after an assessment of the damages, to render judgment for the amount due on the note.

Petition for a rehearing overruled.