*James Gavin* and *Oscar B. Hord*, for the appellant.

*Jno. S. Scobey*, for the appellee.

May Term,
1861.

HEASTON
v.
THE CINCIN-
NATI, &c.
RAILROAD Co.

---

## HEASTON *v.* THE CINCINNATI AND FORT WAYNE RAILROAD COMPANY.

A Court can not legally alter the record of its proceedings after the close of the term; and a bill of exceptions can not be altered. But before a cause is tried, it is proper that material issues, calculated to settle the merits of the pending controversy, should be formed, and Courts possess the power up to that point of correcting errors which have occurred in their proceedings.

Courts will judicially take notice when the general railroad law went into force.

A corporation may sue in its corporate name without averring in the complaint how it became a corporation, or that it is such; and a default, or answer in denial of the complaint, admits the capacity of the plaintiff to sue.

To a suit by a corporation there may, at its commencement, be an answer of *nul tiel* corporation; but such answer is in abatement, and must precede an answer to the merits; and on the trial of the issue formed on such answer, the proof is limited to the question of the existence, *de facto*, of a corporation, under an authority sanctioning such a corporation, *de jure*.

If the answer denies the existence, at the commencement of the suit, of a corporation which is shown to have once existed, it must particularly set

May Term,
1861.

HEASTON
v.
THE CINCIN-
NATI, &c.
RAILROAD CO.

forth the manner in which the corporate powers ceased. *Morgan* v. *The Lawrenceburg Insurance Company* 3 Ind. 285, overruled on this point. A *de facto* corporation, that by regularity of proceeding might be one *de jure*, can sue and be sued, and a party who contracts with such corporation, while it is acting under its *de facto* organization, is estopped, in a suit on such contract, from denying such organization at the date of the contract; but if an organization is completed when there is no law, or an unconstitutional law, authorizing such organization as a corporation, the doctrine of estoppel does not apply.

An answer alleging want of proper parties is the correct mode of raising the question of fact, where a plaintiff suing in a name importing, *prima facie*, a corporation, in fact is not assuming to act as such, but only as a partnership.

A tender of a certificate of stock before suit brought is unnecessary.

Where, in the effort to get a perfectly impartial jury, a challenge to a juror for a cause which did not render him incompetent, is sustained, and the result is achieved, the cause will not be reversed.

A resolution of the board of directors requiring the stockholders to pay an installment of 10 per cent. every thirty days on all cash subscriptions, until the whole is paid, and that due notice thereof be given, is admissible evidence to show a call for payment of an installment in thirty days from date, and every thirty days thereafter.

The word "month," in the proviso of the 8th section of the general railroad law, is used to express the same time as the words "thirty days," in the body of the section.

Where the law requires notice, as a condition precedent to suits for installments of stock, and there is no waiver of the condition, notice, as required, must be given.

The general railroad law does require notice, or a personal demand, before proceeding to forfeit the stock, but not before suit to recover installments.

Subscribers must take notice of the acts of directors, as to calls.

To constitute legal notice, under the general railroad law, one and the same notice, fixing the same time for payment, must have been published in a newspaper in each of the counties, in which one is published, through which the line of the railroad extends.

If instructions are, at the proper time, required to be reduced to writing, and some are given orally, it is error; but if no exception is taken, the error is waived.

When suit is brought upon the preliminary articles for subscription of stock, they constitute the cause of action, and a copy of the articles of association, certified by the Secretary of State, may be given in evidence to prove the existence of the corporation.

Under the general railroad law, suits against subscribers of stock on the preliminary articles, or articles of subscription of stock, and not on the articles of association, were contemplated; but the articles of subscription

and association may be combined, and where they are so, and the articles of association contain an express or implied promise to pay the sums annexed to the names of subscribers, suits may be maintained upon the latter.

May Term,
1861.

HEASTON
v.
THE CINCIN-
NATI, &c.
RAILROAD CO.

Thursday,
June 6.

APPEAL from the *Randolph* Circuit Court.

PERKINS, J.—*The Cincinnati and Fort Wayne Railroad Co.* sued *David Heaston*, on an alleged subscription to the capital stock of said company, of $1,500. His subscription appears to the original articles of organization, and a copy of them is filed as the foundation of the action. The defendant answered in sixteen paragraphs. To a part of those paragraphs the plaintiff demurred; the Court sustained the demurrer, the defendant excepted, and the cause was continued. At a subsequent term, the Court permitted those demurrers to be withdrawn, and others to be filed, argued and decided upon. The appellant contends, that when " a bill of exceptions is sealed, the truth of the facts contained in it can not afterward be disputed. 2 Tidd's Prac. 864. Both parties are concluded by it, and the adverse party can not afterward aver the contrary, *or even supply an omission in it.* 1 Arch. Pr. 210. Hence, he can not have it changed. Our statute allows such an exception as this to be placed on the record; it, however, stands there as if it were in a bill of exceptions. The bill is no part of the record in the Court below, (2 Tidd's Pr. 865,) and of course it could not be altered by the Court below, on the ground of its right to amend its record."

It is true that the Court can not legally alter the record of its proceedings after the term, and that a bill of exceptions can not be altered. See 15 Ind. 73. Nevertheless, it is undoubtedly proper that before a cause is tried, material issues, calculated to settle the merits of the pending controversy, should be formed, and Courts should possess power, up to that point, of correcting errors that may have occurred in their proceedings. Hence, the power of permitting amendments, of filing additional pleadings, &c. The successive acts may all properly appear of record, but the later may correct the errors in the earlier. In this case, if, instead of permitting the former demurrers to be withdrawn and new ones filed,

the Court had permitted the paragraphs of the answer to be re-filed, and new demurrers to them, covering the ground of the former and curing defects, it could not have been held erroneous. It does not appear that the mode of reaching the result arrived at below, injured the defendant; and if not, the cause should not be reversed on his application, on account of an error that worked no injury to the merits of the defense.

The Court, on motion, struck out six paragraphs of the answer. Those paragraphs denied the existence of the corporation, assigning, in the different paragraphs, reasons why the plaintiff was not such; as, that the articles of organization were filed before the law was in force, &c. The paragraphs would have been bad on demurrer; a right result was reached. The Court judicially knew that the general railroad law was in force at the time the corporation was formed. *The State ex rel., &c.* v. *Bailey et al., ante,* p.

A corporation may sue, in this State, in its corporate name, and need not aver in the complaint how it became a corporation, nor that it is such. And a default, or answer in denial of the cause of action, admits the capacity of the plaintiff to sue. *Harris* v. *The Muskingum, &c. Co.,* 4 Blackf. 267, and cases cited. *Hubbard* v. *Chappel,* 14 Ind. 601.

But there may be an answer of *nul tiel* corporation, at the commencement of the suit. The cases *supra;* and *Morgan* v. *Lawrenceburg, &c.,* 3 Ind. 285; Ind. Dig., p. 318. Such answer, it is now settled in this State, is an answer in abatement, and must therefore precede answers to the merits. *Jones* v. *The Cincinnati, &c. Co.,* 14 Ind. 89; *McIntyre* v. *Preston,* 5 Gill. (Ill.) 48; *Phœnix Bank, &c.* v. *Curtis,* 14 Conn. 437. And upon the trial of an issue of fact on such answer, or on a reply thereto, the proof is limited to the question of the existence, *de facto,* of a corporation, under an authority sanctioning such a corporation, *de jure.* In other words, mere irregularities in organization can not be shown collaterally, where there is no defect of power. *The Bank of Toledo* v. *The International Bank,* 21 N. Y. (Court of Appeals,) 542; and the authorities *supra.* See the cases cited in Abb. Pl. (N. Y.) p. 179; also *Ewing* v. *Robeson et al.,* 15 Ind. 26. And where such answer denies the

existence, at the commencement of the suit, of a corporation
which is shown to have once existed, the answer should par-
ticularly set forth the manner in which the corporate powers
ceased. Ind. Dig., § 63, p. 319. A faulty answer in this re-
spect was erroneously held good in *Morgan* v. *Lawrenceburg,
&c.*, 3 Ind., *supra*.

We have asserted above, that the issue of *nul tiel* corpora-
tion is upon the existence of a *de facto* corporation, where
one *de jure* is authorized; and upon this fact rests the doc-
trine of estoppel to deny the existence of a corporation, in
certain cases. The estoppel goes to the mere *de facto* organ-
ization, not to the question of legal authority to make an
organization. A *de facto* corporation, that by regularity of
organization might be one *de jure*, can sue and be sued. And
a person who contracts with such corporation, while it is acting
under its *de facto* organization, who contracts with it as an
organized corporation, is estopped, in a suit on such contract,
to deny its *de facto* organization at the date of the contract;
but this does not extend to the question of legal power to
organize. Hence, if an organization is completed where
there is no law, or an unconstitutional law, authorizing an or-
ganization as a corporation, the doctrine of estoppel does not
apply. *Harriman* v. *Southam, ante*, p. 190; *Brown et al.* v.
*Killian*, 11 Ind. 449. See 15 *id.* 395. So, if the plaintiff suing
in a name importing, *prima facie*, a corporation, in fact is not
assuming to act as a corporation, but only as a partnership,
this fact may be raised by an answer alleging want of parties
in interest to the suit. *Farnsworth* v. *Drake*, 11 Ind. 101.
See *Brown et al.* v. *Killian, supra*. The sixteenth paragraph
of the answer averred the non-performance of a condition
precedent by the corporation, it having failed to tender to the
defendant a certificate of stock. The paragraph was bad.
*The New Albany, Co.* v. *McCormick*, 10 Ind. 499.

It is alleged that a challenge to a juror was wrongly sus-
tained; but judgment will not be reversed, because the Court
sustained a challenge to a juror, for cause which did not ren-
der him legally incompetent, where the act was done in an
effort to get a perfectly impartial jury, and such result was
achieved. *Carpenter* v. *Dame*, 10 Ind. 125.

May Term,
1861.

HEASTON
v.
THE CINCIN-
NATI, &c.
RAILROAD CO.

The board of directors of the company, on *June* 21, 1853 passed and entered on its records the following resolution:

"*Resolved*, That the stockholders in the *Cincinnati and Fort Wayne Railroad Company* are hereby required to pay an installment of 10 per cent. every thirty days, on all cash subscriptions, until the whole subscriptions are paid; and that due notice thereof be given, signed by the president and secretary." It was offered in evidence, on the trial, and objected to by the appellant for the following reasons, stated at the time:

1. That it was too vague, indefinite, and uncertain to bind the defendant.

2. That it did not fix a time when payment of the installments of stock should commence, nor did it fix a definite time when any installment should be paid.

3. That it required the installments of stock to be paid in installments of 10 per cent. every *thirty days*.

The Court overruled the objections and let the resolution be read to the jury. We think the resolution was admissible, to show a call for payment of an installment in thirty days from date, and every thirty days afterward. The appellee claims to be incorporated under the general railroad law of *May* 11, 1852, the 8th section of which, 1 R. S., p. 412, provides that the directors may call in and demand from the stockholders, any sums of money by them subscribed, in such payments or installments as the directors shall deem proper; under penalty of forfeiture of the stock subscribed, if payment be not made by the stockholder " within thirty days after personal demand, or notice requiring such payment, shall have been made in each county through which such road shall be laid out, in which a newspaper shall be published: *Provided*, that subscriptions shall not be required to be paid, except in equal installments of not more than 10 per cent. a month."

It is contended that the word month, here, must be taken to mean calendar month, under the rule prescribed by the code, 2 R. S., p. 339, (Ind. Dig., p. 748) which is that the word month shall mean calendar month, unless otherwise expressed. We think it is sufficiently expressed otherwise in the above cited section of the railroad law; the word month, in the

proviso, is used to express the same time as the words thirty days, in the body of the section.

Where the charter requires notice as a condition precedent to suits for installments of stock, and there is no waiver of the condition, notice, as required by the charter, must be given. Ind. Dig., §§ 73, 74, 75, p. 321. The general railroad law above quoted, does require notice, or a personal demand, thirty days before a proceeding to forfeit the stock, but not before suit to recover installments. *Smith* v. *The Indiana, &c. Company*, 12 Ind. 61; *Johnson* v. *The Crawfordsville, &c. Co.*, 11 Ind. 280. The subscribers must take notice of the acts of the directors as to calls.

To constitute legal notice under the charter, one and the same notice, fixing the same time for payment, must have been published in a newspaper in each of the counties, in which one was published, through which the line of the road extended.

The defendant, at the proper time, required the instructions below to be reduced to writing, but the Court gave some orally. This was error; but no exception was taken, and the error was waived by that omission.

An application was made for a continuance, and it was refused. It appears that *Heaston*, the defendant below, did not, by his own hand, fill out the subscription to the articles of association. It does not very clearly appear whether he signed preliminary articles. He desired to prove by an absent witness, that he did not authorize the person who did fill up his subscription to make it a cash subscription, &c. The affidavit filed for a continuance appears to have been held insufficient, because it was not sufficiently definite as to which set of articles the testimony of the absent witness was to be directed to. See *The Tonica, &c. Company* v. *Stein*, 21 Ills. Rep. 96; *Junction, &c. Company* v. *Reeve*, 15 Ind. 236. This suit, as has been before stated, was based exclusively on the articles of association, or, as they may be denominated, of organization; and, if it could be maintained on those articles, of course the evidence in the cause should have been limited accordingly, and we think the affidavit specified them. It was not contemplated by the general

May Term,
1861.

HEASTON
v.
THE CINCIN-
NATI, &c.
RAILROAD Co.

railroad law, that suits against subscribers of stock should be brought on the articles of association. They were not intended as articles of subscription. The first section of the railroad law provides for articles of subscription of stock in a contemplated railroad. When stock to the amount of $50,000 is thus subscribed; or if the length of the contemplated road be less than fifty miles, then stock to the amount of $1,000 per mile is subscribed, the persons having subscribed to these preliminary articles meet and elect directors, and prepare articles of association, which must contain: 1. The name of the corporation. 2. The amount of the capital stock which may be taken. 3. The number of shares of which it shall consist. 4. The number, and the names, of the first set of directors. 5. The name of the place from which, and the place to which, the road is to be constructed; the names of the counties into which it will extend, and its length, as near as may be. These are all the facts the articles are to contain, and it is manifest, that among them is no contract of subscription.

The articles, containing the above statements, are to be signed by subscribers of stock to the preliminary articles, to the number at least of fifteen, and who have taken at least, in the aggregate, the amount required for organization, and then to be filed with the Secretary of State; whereupon the corporation exists. The articles are signed thus, and the amount that the signers have severally subscribed to the preliminary articles set opposite their names, in order that the Secretary may see that a case exists in which he may receive and file the articles, and give existence to a corporate body; and that Courts may see, from copies of the articles, that a legal corporation has been created.

The corporation, thus created, may sue for the stock upon the preliminary articles; they constituting the cause of action, and give in evidence copies, certified by the Secretary of State, of the articles of association, to prove their corporate existence. These preliminary articles enure to the benefit of the corporation formed. *The Tonica, &c. Company* v. *McNeely*, 21 Ills. Rep. 71; *Penobscot Railroad Company* v. *Dummer*, 40 Maine Rep. 172; Ang. & Ames. on Cor. pp. 190,

191, 412, 414; Red. on Railways, pp. 97, 631, *et seq.* See the N. Y. cases, cited in Abbott's Pl., p. 179. And if additional stock be desired, it is not subscribed to the articles of association, but to separate articles of subscription, (1 R. S., § 3, p. 410,) which may be sued upon by the corporation.

May Term, 1861.

HEASTON
v.
THE CINCINNATI, &c.
RAILROAD CO.

A word here upon the fifth specification required in the articles of association, viz., that of the route and *termini* of the road. The *termini* designated in the articles set forth in this suit are, that said "road shall commence at *Fort Wayne*, in the county of *Allen*, and shall be constructed to the eastern line of the county of *Wayne*, pointing in the direction of *Cincinnati*." We have seen no case sustaining so vague a *terminus* as the southern one of this road, and as definite a one was held void, in *The Atlantic &c. Company* v. *Sullivant*, 5 Ohio St. Rep. 276. We will not now express an opinion on the point. There may be further authorities upon it. But notwithstanding the articles of association were not intended to be articles of subscription of stock, yet this Court has held, in *Eakright* v. *The Logansport, &c. Company*, 13 Ind. 404, that the articles of subscription and association may be combined; and that where they are so, where the articles of association contain an express or implied promise to pay the sums annexed to the names of the subscribers, who must individually, or by agent, subscribe the articles, suits may be maintained upon them.

Considering the amount recovered in this case, the circumstances attending the trial, the evidence given, and that which was absent, and all the surroundings, we think the Court should have sustained the motion that was made for a new trial.

*Per Curiam.* — The judgment is reversed, with costs. Cause remanded, with leave to amend, &c.

*J. Smith* and *M. Way*, for the appellant.

*O. P. Morton* and *W. A. Peele*, for the appellee.