# THE COLORADO LAW REPORTER.

Vol. I.]                    Denver, January, 1881.                    [No. 5

## HUMPHREY v. MOONEY.

*(Supreme Court of Colorado, December 7, 1880—Appeal from the District Court of Arapahoe.)*

CORPORATION. CAN ONE WHO DEALS WITH A CORPORATION, COLLATERALLY QUESTION ITS EXISTENCE? DISTINCTION BETWEEN A CORPORATION DE JURE AND DE FACTO. It is the general rule that one who deals with a corporation, will not be allowed to question its existence in a collateral proceeding; provided the corporation be based upon a charter or statute lawfully authorizing it, though irregularly or defectively organized—a corporation *de facto*. It is different when the question involves the legal existence of a corporation *ab initio*. In that case, one dealing with the corporation is not estopped to deny its legal existence. The estoppel in the former case goes to the mere *de facto* organization, not to the question of legal authority to organize.

WHAT IS REQUIRED TO CONSTITUTE A CORPORATION. Under the statute (Secs. 2 and 3, Corporation Act), the articles of association must be filed in the office of the secretary of state, and be by him recorded, and a certified copy thereof shall be evidence of the existence of the company. The statements which the statutes direct that the certificate of incorporation shall contain, are not made condition precedent to the transaction of business by the company. The omission from the articles of incorporation, of the statement that the stock of the same shall be "assessable" or "non-assessable," does not render the company illegal, not being a matter essential to the existence of the corporation.

MEMBERS OF A CORPORATION NOT LIABLE AS PARTNERS. The individual members of a valid corporation can not be held liable as partners, nor, generally, of *de facto* corporations. Exceptions in the latter case.

RESIDENCE OF CORPORATORS AND PLACE OF EXECUTING ARTICLES OF INCORPORATION. The fact that the corporators are non-residents of the state, and that the articles of incorporation were executed without the state, will not affect the validity of the corporation, provided the acknowledgement of the articles be properly authenticated. The corporation submits itself to the laws of the state, when it assumes to incorporate and act thereunder, in substantial compliance with the statute.

MEETINGS WITHOUT THE STATE. Meetings of the directors of a corporation may be held without the state, when so provided in the articles of

25

incorporation; and, whether or not meetings of the stockholders may be so held, is a question that can not be raised collaterally, either by the corporation or one contracting with it as such. Directors named in the articles are directors by operation of law, and not by election.

RECORD OF CERTIFICATE IN COUNTY. While the omission to record duplicate of the certificate of incorporation in the office of the recorder of the county, where the operations of the company are to be carried on, "may be such a non-compliance with the law as would authorize the people to sustain a writ of *quo warranto* or *scire facias*, and oust the corporation from the exercise of its franchises, it does not necessarily follow that it is not as to third persons a corporation."

STONE, J. The first question presented in this case, is, whether the appellee, the plaintiff in the court below, could question the validity of the corporation in a suit upon a contract he had made with it.

A few cases may be found in which, under the given facts, the legal existence of a corporation has been allowed to be questioned in a collateral proceeding; but, as a general rule, it seems quite well settled, that the validity of the existence of a corporation can not be questioned collaterally.

Several distinctions, however, have been made in the cases covered by both the general rule and the exceptions, dependent upon the conditions in the charter: the terms of a general incorporation statute; whether the suit is between the corporation and one of its members, or a stranger; what the particular object of the suit may be, and whether the *de jure* existence of the corporation is sought to be questioned, or whether it be the regularity of the organization of a *de facto* corporation that is attacked.

Without going into an examination of the cases to illustrate all these distinctive phases of the subject, it is sufficient to notice only the most important distinctions bearing upon the case in hand—the difference between the illegal existence of a corporation *ab initio* on the one hand, and on the other hand, an assumed corporation, based upon a charter or statute lawfully authorizing it, but irregularly or defectively organized. In the former case, it has been held that one dealing with a corporation is not estopped to deny its legal existence on the ground that there was no valid law or authority for the organization; or that the assumed organization was in the face of a prohibition by statute *nisi*, in that there was a failure to comply with an express condition precedent, requiring certain acts to be performed before the corpora-

tion can be considered *in esse*, or its transactions possess validity. *Mokelumne H. M, Co.* v. *Woodbury*, 14 Cal., 427 ; *Lessee of Frost, et al.*, v. *Frostburg Coal Co.*, 24 How., 283 ; *Heaston* v. *Cincinnati, etc. R. R. Co.*, 16 Ind., 279 ; *Abbott* v. *Omaha Smelting Co.*, 4 Neb., 423 ; *Hildreth* v. *McIntire*, 19 Am. Decisions and Notes, 67 ; *Stowe* v. *Flagg*, 72 Ill., 401.

In *Heaston* v. *Cincinnati R. R. Co., supra*, it is said that the issue of *nul tiel corporation* is upon the existence of a *de facto* corporation where it is *de jure* authorized, and that upon this fact rests the doctrine of estoppel to deny the existence of the corporation in certain cases; the estoppel goes to the mere *de facto* organization, not to the question of legal authority to organize.

While some diversity of opinion is found in the courts of the different states as to when the existence of a corporation may be questioned, if at all, in a collateral proceeding, the authorities are almost unanimous in holding that such collateral inquiry cannot be made touching the corporate existence of a *de facto* corporation when there was a lawful authority for its creation. *Cochran* v. *Arnold*, 58 Pa. St., 405 ; *Rondall* v. *Fay*, 32 Cal., 351 ; *Baker, et al.* v. *Administrator of Backus*, 32 Ill., 110: *Tarbell* v. *Page et al.*, 24 Ill., 46 ; *Jones* v. *Cincinnati Type Foundry Co.*, 14 Ind., 89 ; *Hubbard* v. *Chappel, ibid.*, 601 ; *Heaston* v. *Cin. etc. R. R. Co.*, 16 Ind., 279 ; *Mokelumne H. M. Co.* v. *Woodbury, supra ; Washington College* v. *Duke*, 14 Iowa, 17 ; *Slocum* v. *Providence, etc. Co.*, 10 R. I., 114 ; 1 Redfield, Law of Railways, (5 Ed.) 73 ; Ang. & Am. Corp., (10 Ed.) Sec. 635.

In the case before us, the appellee Mooney brought an action against Humphrey, together with other persons, members of an assumed corporation, to recover a sum of money due upon an obligation given therefor by said company through its agent, and it is sought to hold the defendant Humphrey individually liable as a partner, the defendants being declared against as partners. Defendants' answer denies the alleged partnership, and sets up the corporation, organized under the general incorporation law of Colorado as the Trenton Dressing and Smelting Company. Plaintiff replies, averring the non-existence of the corporation. The evidence in support of this averment rests upon certain omissions in the articles of incorporation, and alleged irregularities in the organization of the company as a corporation.

In the case of *Baker et al.* v. *the Administrator of Backus, supra*, where a bill was filed against certain defendants who purported to form a corporation, but who, as alleged, had not complied with the statutes, and the prayer of the bill was that the company be decreed to be a general copartnership, or if it should be declared a corporation, then to be dissolved by order of the court, the opinion gives, besides the general rule that a direct proceeding on behalf of the state is necessary in such case, the additional reason that the corporation should be made a party defendant to the action. "All bodies should be allowed the privilege of being present at their own dissolution," is the rather striking and forcible language used by Mr. Justice Breese upon this point.

The principal point relied upon as ground for alleged noncompliance with the statute, and consequent illegality of the corporation, is based on the latter clause of Sec. 93 of the corporation law of Colorado, relating to mining companies, which reads as follows:

"The certificate of incorporation of any such company, in addition to the other matters required in this act to be stated therein, shall contain a statement that the stock of said company is either assessable or non-assessable, and each certificate of stock issued by any such company shall have plainly printed on the face thereof the word 'assessable,' or 'non-assessable,' as the case may be."

This statement was omitted in the articles of incorporation of the Trenton Dressing and Smelting Company, and this is urged as fatal to the legal existence of the company as a corporation.

By reference to the second and third sections of the corporation act, it will be seen that after enumerating the specifications which the articles of incorporation shall contain, it is provided that a copy shall be filed with the secretary of state, and a copy with the recorder of each of the counties where the principal business is to be carried on, and that when so filed, the secretary of state shall record and preserve the same in his office, and that a certified copy thereof, under the seal of the state, shall be evidence of the existence of the company.

It is to be observed that none of the statements which the certificate of incorporation is directed to contain, are required to be

made as conditions precedent to the commencement or continuance of business by the corporation.

In the case of *Abbott* v. *The Omaha Smelting Co., supra,* cited by the appellee as an authority against the validity of the corporation, the decision turned upon the particular language of the statute of Nebraska, which required that the corporation, " previous to the commencement of *any* business, except its own organization, * * * must adopt articles of incorporation, and have them recorded in the office of the clerk of the county," etc., and it was held that the company was not in existence for the purpose of transacting business as a corporation until such record had been made, and the court point out the distinction between that case and the California case of the *Mokelumne Co.* v. *Woodbury, supra,* wherein it is laid down that " there is a broad and obvious distinction between such acts as are declared to be necessary steps in the process of incorporation, and such as are required of the individuals seeking to become incorporated, but which are not made pre-requisite to the assumption of corporate powers. In respect to the former, any material omission will be fatal to the existence of the corporation, and may be taken advantage of collaterally, in any form in which the fact of incorporation can be called in question. In respect to the latter, the incorporation is responsible only to the government in a direct proceeding to forfeit the charter. The right * * * to be considered a corporation and the exercise of corporate powers, depend upon the fact of the performance of the particular acts in the statute, as essential to its corporate existence."

The case before us certainly falls within this latter class. The specification respecting the assessability of the stock cannot, in the absence of fraudulent intent, be regarded as essential to the corporate existence in this case.

What the relative importance may be in the several statements directed to be set forth in the articles or certificate of incorporation, or whether the omission of any one or more of them might be considered fatal to the existence of an assumed corporation, or its right to the exercise of corporate powers, when inquired into by a direct proceeding for that purpose, we need not now determine.

The evidence in the case, embracing a certified copy of the duly recorded certificate of incorporation, containing all the state-

ments enumerated in the statute, except the one in controversey, together with acts of *user* at the place where the works of the company were located, was sufficient to establish the conclusion that the company was, at the date of the transaction with Mooney, a corporation *de facto*, vested with the power and right to the exercise of all the acts contemplated under its franchise, so far as regards the relation between it and the plaintiff, whose contract with it as such estops him to deny its existence as such *de facto* corporation. *Eaton* v. *Aspinwall*, 19 N. Y., 121 ; *Buffalo R. R. Co.* v. *Carey*, 26 N. Y., 77 ; and cases cited *supra*.

Since the validity of the corporation to make the contract in question is thus clearly established, it follows that the defendant Humphrey, as a member of the corporation contracted with, cannot be held liable as a partner. Nor, indeed, does it follow, as a rule of law, if the legal existence of the corporation could be attacked and overthrown, collaterally or otherwise, that the members of such *de facto* corporation would be liable as members of a copartnership. The facts in a given case may sometimes warrant a holding of partnership liability, as where an already constituted partnership seeks to become incorporated, and exercises corporate powers without color of right; or, where an associated company, by deceit or misrepresentation, fraudulently attempts to evade individual liability through a false assumption of pretended corporate authority; or, where, in respect to the transaction in controversy, a corportion in fact *intended* to assume partnership liability, and especially where, in consideration of such known or supposed intent, the other party was induced to act in entering into the contract.

I am aware that there is considerable diversity of opinion in the decided cases upon this point. The case of *Fuller* v. *Rowe*, 57 N. Y., 26, is an authority for the broad doctrine that parties assuming to act in a corporate capacity without a legal organization, as a corporate body, are liable as partners, with the limitation only that the party so held liable must have been a member of the company at the time the contract was made.

In the case of *Whipple* v. *Parker*, 29 Mich., 380, where a company organized as a partnership in fact, and had been doing business as such some time prior to the execution of articles for a corporation, the Court say:

"Certainly, if they were already a partnership before the attempt to form a corporation, they would not, by the failure of this attempt, cease to be a partnership; but the attempt failing, the partnership continued."

If the opinion thus expressed was decisive of the question under consideration, and it seems to be intended as such, it greatly weakens the force of what the court immediately adds, as follows:

"But suppose they were not a partnership, and had not acquired property or done business until these articles were executed, if the articles failed to make them a corporation, then I am inclined to think they would in legal effect, by thus associating themselves together in the purchase of the property, for the purpose of carrying on the business, and, in carrying it on, become partners in that business."

It is to be remarked, however, that the suit in that case was for the purpose of equitably settling the respective rights of members of the company to property contributed to the general fund.

In the case of *Abbott* v. *the Omaha Smelting Company*, cited *supra*, which involved the question of the partnership liability of Abbott as a member of a company, which was held not to have been a corporation either *de jure* or *de facto*, the court upholds the instruction of the court below, which submitted the question of such partnership liability to the jury as a fact to be determined upon the evidence touching that point.

It is held in *Tarbell* v. *Page et al.*, 24 Ill., 47, that the dissolution of a corporation does not change the relation of the stockholders to the creditors of the company; that it does not operate to convert them into mere partners, and that their liability as stockholders is not changed beyond that imposed by statute.

The case of *Stowe* v. *Flagg et al.*, 72 Ill., 397, is very like that of *Whipple* v. *Parker*, *supra*, involving the property rights, *inter sese*, of parties who had associated in writing for a manufacturing purpose, and had failed in an attempt to become a corporate body, and the court held that the property involved had never been changed into corporate property, but that, under the facts in the case, belonged to the parties as an association under their written agreement.

In *Hubbard and Wife* v. *Chappel*, 14 Ind., 601, it is held that if the name in which the contract may have been made simply,

*prima facie*, imply a corporation, while, in fact, the company is not assuming to be a corporation, but only a partnership, this fact may be shown.

The case of *Fay et al.* v. *Noble et al.*, 7 Cushing, 189, is a strong authority and directly in point, that a partnership liability does not attach to the members of an irregularly organized or illegally assumed corporation.

In the case at bar there is no charge of concealment, misrepresentation or fraud on the part of the company, nor any of its members, nor the agent through whom the contract was made. There is no evidence of intent on the part of the company to assume a partnership liability, nor that the appellee supposed there was any such assumption.

He accepted the obligation of the company as the engagement of a corporation clothed with a statutory liability only. Treating with it as such, he is presumed to have known the extent of that liability and to have acted with reference thereto. The doctrine of a partnership liability in such a case is not founded in law or reason, and is repugnant to the very purposes of the statute authorizing a corporation, one object of which is to limit individual liability. "It cannot be, in the absence of all fraudulent intent, that such a legal result follows as to fasten on parties involuntarily, for such a cause, the enlarged liability of copartners; a liability neither contemplated nor assented to by them. The very statement of the proposition carries with it a sufficient refutation.   *    *    *    Corporations are known and recognized legal entities, with rights and powers clearly defined and well understood, and wholly distinct and different from those of individuals and copartnerships. Persons who subscribe for and take stock in them are subject to certain fixed and limited liabilities, which they voluntarily assume, and those liabilities are not to be enlarged so as to affect innocent parties beyond the letter of the law. A copartnership cannot take upon itself the functions of a corporation, nor can the latter, or its members be made subject to the liabilities of a copartnership in the absence of statutory provisions imposing such liabilities. The personal liability of a joint stock company or copartnership is inconsistent with the character and nature of a corporation, of which the law properly recognizes only the creature of the charter and knows not the individuals." *Fay* v. *Noble, supra.*

Looking into the statutes, to the provisious of which the corporation in question was made subject, we find various enactments by which officers and members are made individually liable for debts contracted by corporations in case of non-compliance with certain requirements, but no provision is made by which such individual liability attaches by reason of any omission to organize in the manner prescribed by the incorporation law.

The statute, it is true, prescribes the mode of organization, and what the articles of incorporation or charter certificate shall contain, but annexes no penalty or liability to the neglect or omission to strictly comply with it.

Corporations as a rule, and espècially in this state where so very many are created under our general incorporation law—representing and controlling the largest share of the wealth and industries of the state, and bearing either good or bad fruit, according to the character or purpose of the body—should be held to a strict accountability for their corporate acts. Many of these, doubtless, are liable to a decree of dissolution and forfeiture of their franchises, in a proceeding for that purpose; while on the other hand, considering not alone the mere legal rights of corporations, but that owing to the peculiar nature of our mineral and other resources of wealth and industry, they depend for their successful development upon such aggregation of capital, intelligence and unity of action, whenever a body of persons becomes lawfully incorporated, or makes a *bona fide* attempt so to do, and by actual user and honest intent evinces the legitimate purpose of such organization, no strained construction ought to be interposed against affording acknowledged protection to the corporate rights of stockholders who contribute their means to such useful enterprises.

It is also objected against the validity of the smelting company that its corporators and officers were non-residents of this state; that the subscription and acknowledgment of the articles of incorporation were made, and meetings of the officers held at a place without the state. These objections, we think, are not well founded. There is nothing in the statutes requiring corporators and officers, any more than stockholders, to be residents of the state granting the charter, and, indeed, it would be a rather strange law, if there were such an one. But even such a provision would, in the case of a *de facto* corporation, be

26

met by the authority of the Supreme Court of Pennsylvania in the *Delaware & Hudson Canal Co.* v. *The Penn. Coal Co.*, 21 Pa. St., 131–146, where it is held that—

"Conceding that the president and managers of the Pennsylvania Coal Co., at the time of entering into the contract were resident citizens of New York, and not residents or citizens of Pennsylvania, and that they were therefore ineligible, it does not follow that the agreement is not binding on the defendant. The officers may have been ineligible, but this cannot be taken advantage of in this collateral proceeding. It is sufficient for the plaintiff, and all third persons, that they have dealt in good faith with the officers *de facto*."

The subscription and acknowledgement of the articles of incorporation, properly authenticated, may, we think, be made without as well as within the state. The corporation submits itself to the laws of Colorado, when it assumes to incorporate and act thereunder, in substantial compliance with the statute.

Our statute does not in terms require the certificate of incorporation to be executed within the limits of the state, nor does it in terms require a meeting of the corporators prior to the execution of the certificate.

The essential pre-requisites to the formation of a corporation are a certificate in form and substance as prescribed by statute; that it be signed by the corporators; that it be acknowledged before some officer competent to take the acknowledgment of deeds, and that it be filed in the office of the secretary of state, and a copy in the office of the recorder of deeds of the county in which the principal business is to be carried on.

The chapter on conveyances provides the manner in which, and the officers before whom conveyances and contracts affecting title to real property may be acknowledged without the state, as well as within the state. The execution of a certificate of incorporation under the statute is analagous to the execution of a deed of conveyance, and neither instrument is of any validity without a delivery.

It is the filing of the certificate that brings the corporation into existence. This instrument may contain all that the statute requires; its execution may be wholly regular, but the performance of these acts does not constitute a corporation. The mere certificate, like an undelivered deed, is without validity or force; it may

be retained by one of the makers, or it may be destroyed.    But, when filed, as the law requires, and recorded in the office of the secretary of state, the statute declares that "a copy thereof duly certified by the secretary of state, under the great seal of the state of Colorado, shall be evidence of the existence of such company."

As respects the holding of meetings of directors beyond the limits of the state, section 18 of the corporation act provides that such meetings may be lawfully held, provided such provision is made in the certificate of incorporation.

Upon examining the copy of the certificate set out in the record, it is found to contain in its statement of the places where the business and operations of the company are to be carried on, the following provision:

"*Sixth*—The operations of our said company shall be carried on at or near Golden city, Jefferson county, state of Colorado, where the principal office shall be kept, with the privilege of a branch office in the city of Trenton, state of New Jersey, for the holding of meetings of stockholders and directors, and for the transaction of such business as the best interests of the company may require."

Meetings, therefore, of the directors were regular without the state.    Section 6 of the corporation law provides for the election of the directors annually by the stockholders, "at such time and place as shall be directed by the by-laws of the company." Conceding that meetings of the stockholders without the state, although so directed by the by-laws of this company, are not within the saving clause of the 18th section of the statute referred to, and were therefore irregular or illegal, such act, while a violation of the statute, being such, not by express inhibition, but by construction of its contemplated meaning, and upon principle, comes within the rule already laid down respecting irregular organization, that it cannot be taken advantage of in a collateral proceeding by either the corporation or one contracting with it as such.

It is also to be observed that the persons who are named by the corporators in the certificate as directors of the company for the first year, are created such directors by operation of law, and not by election of the stockholders after the corporation is formed; and hence it might be possible for the corporation to begin and go on in business for a year without any meeting of

the stockholders, such directors, under the provision of sections 5, 6, 7 and 8, being empowered to choose the president and other officers, adopt by-laws and "manage the affairs of such company for the first year of its existence."

The omission to record a duplicate of the certificate in the county where operations of the company were carried on, is met by the case of the *Mokclumne H. M. Co.* v. *Woodbury*, 14 Cal., 426, and also by the case of *Tarbell* v. *Page*, 24 Ill., 46, which is still stronger, there being in that case no certificate filed with the secretary of state, and the court say:

"While it may be true that a failure to file this certificate in the secretary of state's office may be such a non-compliance with the law as would authorize the people to sustain a writ of *quo warranto*, or *scire facias*, and to oust the corporators from the exercise of their functions, it does not necessarily follow that it is not, as to third persons, a corporation."

The judgment in favor of the appellee, rendered by the court below, is, for these reasons, erroneous, and must be reversed.

Judgment reversed.

*L. C. Rockwell*, attorney for appellant.
*Wells, Smith & Macon*, attorneys for appellee.