# CHARLESTON.

DEEPWATER RAILWAY Co. *v.* LAMBERT *et als.*

Submitted November 19, 1903—Decided December 12, 1903.
　　　　　　　　　　　　　　　　　　　　　　　　54　387
　　　　　　　　　　　　　　　　　　　　　　　　e57　692|

1. RAILROAD CHARTER.

The terms of statutes providing for the organization of railroad companies, and the extension of lines of existing companies, requiring designation, in the articles of incorporation, and certificates for extensions, of the termini of railroads and extensions thereof, to be constructed by companies, organizing and existing under them, are liberally construed in favor of the companies, and substantial compliance therewith is sufficient. (p. 389).

2. RAILROAD CHARTER—*Resolution.*

A railroad company, duly organized under the general laws of this state, desiring to extend its line, as it may do, under section 53 of chapter 54 of the Code of 1899, after filing, in the office of the Secretary of State, a certificate, stating "the point at or near which such extension in this state shall commence and terminate," passed, at a meeting of its stockholders, and certified and filed, as aforesaid, the following resolution:

"*Resolved.* That the road be extended from its present terminus named in articles of incorporation and charter, at or near the village of Glen Jean, and near the junction of White Oak Fork of Dun Loup Creek, with said Dun Loup Creek in the county of Fayette, state of West Virginia. Said extension hereby authorized passes through the counties of Fayette, Raleigh, Wyoming, Mercer, Summers and Monroe, West Virginiai, to a point on the state line on the line of Craig, Alleghany or Giles counties, Virginia, said extension to be located on the most practicable route from the present terminus at or near Glen Jean, in the county of Fayette, West Virginia, up the Valley of Dun Loup Creek, and its tributaries into the county of Raleigh, thence through Raleigh County by the most practicable route to the county of Wyoming, thence through Wyoming County by the most practicable route to the county of Mercer, thence through the county of Mercer to the Bluestone River, thence down the same by the most practicable route to New River, in the county of Summers, thence with New River and its tributaries by the most practicable route through the county of Summers to the county of Monroe, to a point on the state line and on the line of Craig, Alleghany or Giles Counties, Virginia, said extension to be located on the most practicable route as shown on the maps and profiles filed as required by law,

and that the foregoing resolution shall be filed with the secretary of state of West Virginia, as the certificate of extension as required under chapter 54 of the Code of West Virginia." *Held*: That said resolution designates, with sufficient certainty, the termini of the proposed extension. (p. 390).

Error to Circuit Court, Mercer County.

Proceedings by the Deepwater Railway Company against S. P. Lambert and others to condemn land. From the judgment, plaintiff brings error.

*Reversed*

A. N. CAMPBELL, R. C. & B. McCLAUGHERTY, and BROWN, JACKSON & KNIGHT, for plaintiff in error.

A. W. REYNOLDS and J. S. CLARK, for defendants in error.

POFFENBARGER, JUDGE:

The Deepwater Railway Company commenced a proceeding in the circuit court of Mercer county, in August, 1903, to condemn rights of way over numerous tracts of land, among which were certain lands owned by the Pocahontas Coal and Coke Company and the Norfolk & Western Railway Company. On the return day of the notice, the Norfolk & Western Railway Company appeared and filed an answer, setting up certain rights under unrecorded contracts, to which the petitioner replied generally and specially, and moved for a continuance until September 1, 1903, and the motion was sustained over the objection of the petitioner. On said last mentioned day the parties again appeared, as did also the said Pocahontas Coal and Coke Company, and pleas were filed, denying petitioner's right to condemn. On said pleas, issue was made, and the petitioner introduced its articles of incorporation, authorizing it to construct and operate a railroad from a point near Deepwater in Fayette County to a point at or near Glen Jean in said county. Then it offered a resolution adopted by the stockholders of the company, and filed in the office of the Secretary of State, providing for an extension of the road from Glen Jean to the state line, to the introduction of which the court sustained an objection interposed by the defendants, and refused to allow it and the proof of the filing thereof with the Secretary of State, to go in as evi-

dence. The court refused, upon the like objection, to allow the introduction of maps of locations of the proposed extension, resolutions respecting the same and the surveys, and other evidence. To all these rulings the petitioner excepted, and, the defendants having offered no evidence, the court, trying the case, in lieu of a jury, found for the defendants and dismissed the petition.

The court based its action upon the uncertainty of the extension resolution, holding that it does not state, with sufficient certainty, the point at or near which one of the termini of the extension will be located, and is, for that reason, void. The statute, authorizing extensions of their lines, by railroad corporations, contains the following clause: "Provided, that such corporation before commencing any such extension in this state, shall file in the office of the secretary of state, a certificate stating the point at or near which such extension in this state, shall commence and terminate." Section 53 of chapter 54, Code of 1899. By way of compliance with this requirement, a copy of the resolution in question was certified by the chairman and secretary of the stockholders meeting and filed in the office of the secretary of state, and reads as follows:

"*Resolved*, That the road be extended from its present terminus named in articles of incorporation and charter, at or near the village of Glen Jean, and near the junction of White Oak Fork of Dun Loup Creek, with said Dun Loup Creek in the County of Fayette, State of West Virginia. Said extension hereby authorized passes through the counties of Fayette, Raleigh, Wyoming, Mercer, Summers and Monroe, West Virginia, to a point on the state line on the line of Craig, Alleghany or Giles counties, Virginia, said extension to be located on the most practicable route from the present terminus at or near Glen Jean, in the county of Fayette, West Virginia, up the valley of Dun Loup Creek, and its tributaries into the county of Raleigh, thence through Raleigh County by the most practicable route to the county of Wyoming, thence through Wyoming County by the most practicable route to the county of Mercer, thence through the county of Mercer to the Bluestone River, thence down the same by the most practicable route to New River, in the county of Summers, thence with New River and its tributaries by the most practicable route through the county

of Summers to the county of Monroe, to a point on the state line and on the line of Craig, Alleghany or Giles counties, Virginia, said extension to be located on the most practicable route as shown on the maps and profiles as required by law, and that the foregoing resolution shall be filed with the secretary of state of West Virginia, as the certificate of extension as required under chapter 54 of the Code of West Virginia."

It will be observed that the beginning point of this extension is definitely fixed by the first clause of the resolution. The next clause gives a general indication of the route of this extension without fixing the terminus at any certain point. It says the extension shall go "to a point on the said line of Craig, Aleeghany or Giles County, Virginia." The court judicially knows that these three counties of Virginia border on the West Virginia line for a long distance, and counsel for the defendants, in his brief, states that distance to be one hundred and thirteen miles. But this clause is followed by another, giving a more particular description of the route, commencing at Glen Jean and giving every county consecutively through which it is proposed to extend the road, and concluding with the following language: "Thence with New River and its tributaries by the most practicable route through the county of Summers to the county of Monroe, to a point on the state line and on the line of Craig, Alleghany or Giles Counties, Virginia." Following this particular description, the point at which the extension will strike the Virginia line will necessarily be a point on that line where the three counties of Monroe, Summers and Mercer corner on the line of Craig County, as will appear by reference to a map of the state showing the counties. This describes both the route and the terminus, definitely fixing the latter for all practical purposes. No citation of authority is needed to show that courts take judicial notice of the geography of the state, its lines and sub-divisions. Reading this particular description of the route and terminus of this extension with the map before us, it is found impossible, without doing violence to the language of the resolution to reach the point on the Virginia line elsewhere than at or near this common corner of the three counties. Following the course of the New River upward from the mouth of the Bluestone River, one strikes that corner, and it is impossible to strike the state line elsewhere without going through

Monroe County, instead of to Monroe County, or through Mercer County a second time, instead of one time as prescribed by the resolution. Here, however, it is suggested that the words "and its tributaries," in referring to the New River, makes the point uncertain. But the tributaries cannot be followed to any other point on the Virginia line without going either into Monroe County or into Mercer County, and to do either of · these things would be inconsistent with the clear language of the resolution, respecting the objective point of the road. It may be possible that, in following the general course of the New River, it will be practicable and advantageous to depart from it at some point, and follow a tributary for some distance, and then go back to the river. For this reason, it does not appear that the words "and its tributaries" will be without meaning or force under this interpretation of the meaning of the resolution, and the rule of construction requiring the giving of effect to every word, when possible, is not violated.

This construction is in harmony with that other rule, applicable alike to statutes, contracts, deeds and other instruments, which makes words and clauses general in their nature yield to those which are more particular, when both the general and the particular clauses refer to the same matter. Suth. Stat. Cons. sections 158, 159, 216. The first clause is general, but its generality is restrained and limited by what follows. Both it and that which follows it relate to the same thing, the terminus of the road. As independent clauses, they would be inconsistent. As clauses standing together, they must be read and considered together and the instrument interpreted as a whole. In doing this, the rule of construction is to be applied, and its application makes the terminus sufficiently certain to comply substantially, at least, with the requirements of the statute, and nothing more is necessary.

As a rule, the courts give to statutes, authorizing the formation of railroad companies, a liberal construction in respect to the requirements thereof concerning the designation of the termini of the road for the construction of which the company is formed. Redf. on Railways, Vo. 1, pp. 412, 413. One of the earliest cases bearing on this question is *Railroad Co. v. Sullivant,* 5 Ohio St. 276. The certificate of the organization of the corporation in that case was held insufficient, but it lacked

certainty in almost every particular. The statute required a statement, not only of the termini of the road, but also of the names of the counties through which it should pass.   One terminus was described as "a point on the Ohio and Pennsylvania state line in the county of Trumbull;" and the other as "a point on the Ohio River in same state, in the county of Brown or Adams."   The route was described as running through "Trumbull, Mahoning, Portage, Stark, via the town of Massilon, Wayne, it may be Holmes, Knox, Licking, Franklin, via the city of Columbus, or near thereto, Pickaway, or it may be Fayette and Madison, or one of them, Ross or Highland, and it may be through each of them, Pike, it may be Brown or Adams."   Here was uncertainty both as to the counties through which the road would pass and as to the termini.   In *Callender* v. *Railroad Co.* 11 Ohio St. 516, a very liberal construction was given to the statute, and the certificate was held good.   It read in part as follows:   "To commence at some point to be hereinafter desingated in the township of Hudson, in the county of Summit, passing through the county of Portage or Cuyahoga."   This was not a condemnation proceeding, and the company denied it had any corporate existence, and upon two well settled principles, a decision of the question of the sufficiency of the description might have been avoided.   In all ordinary actions *ex contractu* or *ex delicto,* it is enough to show corporate existence *de facto,* and a corporation is generally precluded by estoppel from denying its own existence.   But the court did pass upon the sufficiency of the articles of incorporation and asserted most unequivocally and emphatically the rule of liberal construction in favor of the company, saying, among other things: "But the object being of public interest and the construction of such roads by private enterprise equally subservient of the convenience of the public, as if constructed by the state at public expense, such enterprises undertaken by private associations, have always been favored by the state, and the object of the legislature has been, as evinced by past legislation, to invest such companies with all that right of eminent domain, which the state herself might reasonably exercise in the location, construction, and maintenance of such public improvement.   The termini and line of this road would, without doubt, have been regarded sufficiently certain if expressed in the same language used in

this certificate, in a special act or charter under our former constitution; and I am unable to perceive, either in reason or law, any ground for an exception to its validity for want of certainty, under this general act, which could not have been urged against the incorporation of the company if so claimed under a special act or charter."

*Eakright* v. *Railroad Co.*, 13 *Ind.* 404, was a suit to recover upon a subscription to the original stock of the railroad company, and the court, properly or improperly, proceeded upon the theory that, in order to recover, it was necessary that the company prove its existence *de jure*. The organization was effected under a special act of the legislature, requiring a designation of "the name of the place from which, and the place to which, the proposed road is to be constructed." It required this designation to be made in articles of association to be subscribed by the stockholders, and the description, as given in that instrument, described the termini as follows: "The railroad shall commence at the west, or such point on the west line of De Kalb County, with a view of connecting with the present Auburn and Eel River Valley Railroad, at such point as may be agreed on by the companies so connecting; thence running down Eel River valley to Logansport." In passing upon the sufficiency of its designation, the court said: "The statute simply requires the name of such place to be set forth. This must be done with a reasonable degree of certainty. In our opinion, the articles on their face, show that this requirement of the statute has been properly complied with." The court could not have deemed it a strict compliance, as the beginning point was not stated, but was left to be fixed by agreement. Hence, they must have considered a substantial compliance sufficient, and, in doing so, the construction was certainly a very liberal one in favor of the company.

In *State* v. *Bailey*, 19 Ind. 452, and *Heaston* v. *Railroad Co.*, 16 Ind. 275, the court expressed doubt as to whether the following description of termini in articles of association was sufficient: "Said road shall commence at Fort Wayne, in the county of Allen, and shall be constructed to the eastern line of the county of Wayne, pointing in the direction of Cincinnati." But the court said: "If it had been that that terminus was to be the east line of Wayne County, at the point where it would

meet a road in Ohio, extending from Cincinnati, with which it was to form a continuous line between Fort Wayne and Cincinnati, we think it would clearly have been sufficient. Inferentially, perhaps, it is thus stated now." That would have been a very indefinite and uncertain designation, as compared with that found in the resolution of extension now under consideration.

The Ohio statute requires the designation of the names of the places of the termini of railroads, and not the names of the places "at or near" which the termini will be, as ours does, but it was held in *Warner* v. *Callendar*, 20 O. St. 190, that it was sufficient to say: "In or near the town of Lima." Again, in *Railroad Co.* v. *Hatch*, 20 N. Y. 157, a statute requiring the articles of association to state the length of the proposed road "as near as may be" was held to have been sufficiently complied with by the statement that the road was to be "about seventy-five miles long." The statute further required an affidavit showing that one thousand dollars per mile had been in good faith subscribed and ten per cent on the subscription paid, and it was held that the statement in the affidavit that eighty-four thousand, one hundred dollars had been subscribed was a sufficient compliance with this requirement. The court decided that the omission, from the affidavit required, of the words "in good faith", in stating that ten per cent had been paid in cash on the subscription, was immaterial.

These authorities abundantly establish the rule of liberality in the construction of statutes authorizing the formation of railroad companies. The courts everywhere justly hold that the organization of these corporations is favored and encouraged by the legislature as necessary agencies of internal improvement, promotive of the convenience of the public and necessary to the development of the material wealth of the state, as well as the furtherance of its commercial interest and general welfare. In no state or country, is there greater necessity or reason for railroad building and extension than in the state of West Virginia, and its legislation has been at all times such as to encourage their construction and operation. Under nothing but the strictest rule of interpretation could it be held that this resolution falls short of a compliance with the statute. A careful

examination of the authorities fails to reveal any such rule as obtaining anywhere.

Whether, in a condemnation proceeding, a railroad company must prove its existence *de jure,* when the plea of *nul tiel* corporation is interposed, has been extensively and ably discussed in the briefs filed, as well as in the oral argument, but the decision of that question is wholly unnecessary, as the certificate and resolution, under which the proceeding has been instituted, are clearly valid.

From this conclusion, it results that the court below erred in refusing to admit the evidence offered by the applicant, and also in its finding and judgment. Therefore, the judgment will be reversed and the cause remanded for further proceedings, in accordance with the principles here decided, and, further, according to law.

*Reversed.*